IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California Borough,
        Appellant

    v.

Andrew Glenn Rothey

:
:
:
:  No. 496 C.D. 2017
:  Argued: February 5, 2018
:
:

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: April 25, 2018

California Borough (Borough) appeals a decision of the Court of Common Pleas of Washington County (trial court) affirming a final determination of the Office of Open Records (OOR) that a video recording of a holding cell at the Borough Police Department was disclosable. The video records a confrontation between a police officer and a detainee in the cell. The Borough contends that the OOR lacked jurisdiction to hear the requester's appeal; that the trial court erred in holding otherwise; and that OOR's final determination was legally invalid. For the following reasons, we reverse.

## Background

On August 7, 2015, Andrew Glenn Rothey (Requester) submitted a written request to the Borough for the

> [v]ideo recording of all interaction between Adam Logan and [ ] Borough Police Officer Justin Todd Shultz in a holding cell in the [ ] Police Department on November 9, 2013, particularly the physical altercation between Mr. Logan and Officer Shultz.

Reproduced Record at 11a (R.R. __). The requested video was produced by a surveillance camera installed in the holding cell where Logan was awaiting arraignment on criminal charges. The video shows Shultz grabbing Logan by the throat and slamming him onto a bench. Upon viewing the video, Police Chief Rick Encapera discharged Shultz and filed criminal charges of official oppression and simple assault against him. Shultz pled guilty to one count of simple assault on May 5, 2015.

On September 14, 2015, the Borough denied Requester access to the video recording of the incident. It asserted that the video related to a criminal and noncriminal investigation of Shultz and, therefore, was exempt from disclosure under Section 708(b)(16) and (17) of the Right-to-Know Law.[1] Alternatively, the Borough asserted that the video was exempt from disclosure under Section 708(b)(1)-(3) of the Right-to-Know Law[2] because release of the video "would be reasonably likely to jeopardize or threaten public safety …, and/or to endanger physical security …, and poses [a] substantial and demonstrable risk to personal security[.]" R.R. 12a. Finally, the Borough asserted that Section 9106(c)(4) of the Criminal History Record Information Act (CHRIA)[3] prohibited it from releasing the video to any person other than a criminal justice agency. The denial letter advised Requester that his appeal, if any, should be filed with the OOR.

### OOR's Final Determination

Requester appealed to the OOR arguing, among other things, that the exemptions claimed by the Borough were no longer applicable because the requested video had been disclosed to the media. In response, the Borough reiterated its

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §67.708(b)(16)-(17).

[2] 65 P.S. §67.708(b)(1)-(3).

[3] 18 Pa. C.S. §9106(c)(4).

grounds for denial and submitted a sworn affidavit of Chief Encapera. The Borough further asserted that Section 503(d)(2) of the Right-to-Know Law[4] invested the district attorney's appointed appeals officer, not the OOR, with jurisdiction to hear the subject appeal.

The OOR held a hearing, where Encapera, the sole witness, testified. He described the holding cell as a "square cubical" located inside the Police Department "with a locked door[,] a glass window to look in[, and] a bench seated in it with leg shackles on each side to secure prisoners." Notes of Testimony, 2/8/2016, at 17 (N.T. __); R.R. 47a. A surveillance camera is installed in the "upper right-hand corner of the cell[, which] is designed to show the prisoner as [he's] sitting in the cell." N.T. 18; R.R. 48a. Encapera testified that the camera is recording "all the time 24/7," regardless of whether a prisoner is in the holding cell. N.T. 30; R.R. 60a.

Encapera testified about the incident of November 9, 2013. Officers who witnessed the incident reported it to Encapera, who then viewed the video recording, downloaded it and brought it to the district attorney for review. The district attorney and Encapera agreed that Shultz's "actions were criminal in nature." N.T. 38; R.R. 68a. Encapera fired Shultz and filed criminal charges against him.

Encapera acknowledged that the video recording was not created for the purpose of investigating Shultz or with an "expectation that a criminal act was about to occur in the holding cell;" rather, the camera was there to ensure "the safety of the prisoner." N.T. 39; R.R. 69a. Encapera testified that the camera also ensures the safety of the police officers because they can monitor the holding cell to ensure that prisoners are "not trying to conceal anything or attempting to produce any type

_____

[4] 65 P.S. §67.503(d)(2).

3

of weapon that wasn't found during the normal search." N.T. 21; R.R. 51a. Encapera further testified that were the video to be distributed publicly, a future prisoner might learn where the blind spots in the holding cell are located and use that knowledge to conceal drugs or weapons not discovered by the police.

Encapera acknowledged that on December 4, 2013, he permitted a local news reporter from WPXI to view the video at the police station. He also permitted a reporter from another station, WTAE, to film a news segment in the holding cell where the incident occurred. Encapera testified that the WTAE reporter was allowed to do only "spot shots," as opposed to a "complete shot[,]" of the holding cell. N.T. 60; R.R. 90a. Both the WPXI and WTAE news segment videos were submitted into evidence to the OOR.

On June 15, 2016, the OOR issued a final determination granting Requester's appeal. It held that it had jurisdiction over the appeal because the requested video was not a "criminal investigative record" within the meaning of Section 503(d)(2) of the Right-to-Know Law, 65 P.S. §67.503(d)(2). Crediting Encapera's testimony, the OOR found that the video was not recorded "for the purpose of furthering a criminal investigation[]" but rather "for the safety of the prisoner." OOR Final Determination at 6; R.R. 116a. Because the video was not created "merely or primarily" for investigative purposes, the OOR rejected the Borough's arguments that the video was exempt from disclosure under the criminal and noncriminal investigation exceptions in Section 708(b)(16) and (17) of the Right-to-Know Law, 65 P.S. §67.708(b)(16)-(17), or Section 9106(c)(4) of CHRIA, 18 Pa. C.S. §9106(c)(4). OOR Final Determination at 14-19; R.R. 124a-29a.

The OOR rejected Requester's argument that the Borough waived its right to assert an exemption because it had already disclosed the video to the media.

4

The OOR reasoned that the Borough showed the news reporters the video recording "outside the parameters of a [Right-to-Know Law] request[,]" which does not "'belie the real security concerns' the Borough has in releasing the video as a public record." OOR Final Determination at 7; R.R. 117a. However, the OOR found Chief Encapera offered no more than "mere speculation" that a release of the video would be "reasonably likely" to impose a substantial risk of physical harm to personal security; jeopardize public safety; or endanger the physical security of the building. OOR Final Determination at 9; R.R. 119a. The OOR held that the Borough failed to demonstrate that the video was exempt from disclosure under the security-related exceptions set forth in the Right-to-Know Law.

**Trial Court Decision**

On July 15, 2016, the Borough filed a petition for review with the trial court, again asserting various exceptions under the Right-to-Know Law, confidentiality under CHRIA, and the OOR's lack of jurisdiction to hear Requester's appeal. The trial court held a hearing, where Encapera again testified as the sole witness. By order of March 21, 2017, the trial court affirmed the OOR's final determination. The trial court agreed with the OOR that Encapera's testimony consisted of "conjecture and speculation[,]" which was not sufficient to show that release of the video would be "reasonably likely" to cause security problems. Trial Court op. at 6; R.R. 200a.

In so holding, the trial court relied upon *Pennsylvania State Police v. Grove*, 119 A.3d 1102 (Pa. Cmwlth. 2015) (*Grove I*), *affirmed in part, reversed in part and remanded*, 161 A.3d 877 (Pa. 2017) (*Grove II),*[5] to conclude that the video

---

[5] At the time the trial court decided the present case, the Supreme Court had not rendered its decision in *Grove II*.

5

was not a criminal investigative record. The trial court held the video was disclosable because it was not created "to report on a criminal investigation or set forth or document evidence in a criminal investigation or steps carried out in a criminal investigation." Trial Court op. at 6-7 (citing *Grove I*, 119 A.3d at 1108); R.R. 200a-01a. Likewise, the trial court rejected the Borough's claim that the video was exempt from disclosure as a noncriminal investigative record. Concluding that the video was not a criminal investigative record, the trial court held that the OOR, not the district attorney's designated appeals officer, had jurisdiction to hear Requester's appeal under Section 503 of the Right-to-Know Law. The Borough appealed to this Court.[6]

## Appeal

On appeal, the Borough presents eight issues for our consideration, which we combine into three for clarity.[7] The Borough first argues the trial court erred in ruling that the OOR had jurisdiction to hear Requester's appeal. Second, the Borough argues that the trial court erred in concluding that the video recording was not exempt from disclosure under the criminal and noncriminal investigation exceptions in Section 708(b)(16) and (17) of the Right-to-Know Law, 65 P.S. §67.708(b)(16)-(17), or Section 9106(c)(4) of CHRIA, 18 Pa. C.S. §9106(c)(4). Finally, the Borough argues that the trial court erred in ruling that the public safety exception, physical security exception, and personal security exception set forth in

---

[6] This Court's review in a Right-to-Know Law appeal determines "whether the trial court committed an error of law and whether its findings of fact are supported by substantial evidence." *Paint Township v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015). The statutory construction of the Right-to-Know Law is a question of law subject to this Court's plenary, *de novo* review. *Hearst Television, Inc. v. Norris*, 54 A.3d 23, 29 (Pa. 2012).

[7] We have also rearranged the order of the Borough's issues for ease of disposition.

6

Section 708(b)(1)-(3) of the Right-to-Know Law, 65 P.S. §67.708(b)(1)-(3), did not apply to the video. We address these issues *seriatim*.

## I.

The Borough first argues the trial court erred in holding that the OOR had jurisdiction to hear Requester's appeal. The Borough contends that appeals relating to criminal investigative records in possession of a local agency must be heard by the district attorney's designated appeals officer in accordance with Section 503(d)(2) of the Right-to-Know Law. Requester responds that Section 503(d)(2) is ambiguous because it does not state the conditions under which the OOR "is stripped of jurisdiction." Requester Brief at 13-14. In any event, Requester maintains the issue of jurisdiction is moot because the trial court has jurisdiction over appeals from both the OOR and the district attorney's appeals officer. *Id.* at 11-12.

We begin with an examination of Section 503 of the Right-to-Know Law. Generally, the OOR appoints an appeals officer to hear a requester's appeal of a local agency's denial of access to records. 65 P.S. §67.503(a). However, the Right-to-Know Law provides that criminal investigative records should be reviewed by an appeals officer designated by a district attorney. *Miller v. County of Centre*, 135 A.3d 233, 239 (Pa. Cmwlth. 2016), *affirmed*, 173 A.3d 1162 (Pa. 2017) (noting that Section 503 of the Right-to-Know Law provides "a separate appeals track[]" in recognition of "the concerns of non-law enforcement personnel reviewing investigative records[.]"). Specifically, Section 503(d)(2) of the Right-to-Know Law provides:

> The district attorney of a county shall designate one or more appeals officers to hear appeals under Chapter 11 relating to access to criminal investigative records in possession of a local agency of that county. *The appeals officer designated by the*

> *district attorney shall determine if the record requested is a criminal investigative record.*

65 P.S. §67.503(d)(2) (emphasis added). "As a result of this threshold determination, the following substantive review will be conducted by either OOR (in the case of records other than criminal investigative records) or by the [district attorney's] designated appeals officer (in the case of criminal investigative records)." *Pennsylvanians for Union Reform v. Centre County District Attorney's Office*, 139 A.3d 354, 357 (Pa. Cmwlth. 2016).

Where there is a dispute over whether a requested record is a criminal investigative record, the statute is unclear as to which appeals officer shall make the "threshold determination." *See Sporish v. Springfield Township*, (Pa. Cmwlth., No. 421 C.D. 2014, filed August 27, 2014), slip op. at 5 n.3 (unreported)[8] (noting that Section 503 of the Right-to-Know Law presents a "chicken and egg quandary[.]"). The Borough asserts that only the district attorney's designated appeals officer, not the OOR, had jurisdiction to hear Requester's appeal once the Borough denied the request on grounds that the video was a criminal investigative record. Notably, the Borough denied the request on other grounds and, itself, directed Requester to appeal to the OOR. The Borough's interpretation of the Right-to-Know Law would have required Requester to appeal some issues to the OOR and one issue to the district attorney. It is not at all clear that this cumbersome procedure was intended by the legislature or that the OOR lacks jurisdiction over an appeal simply because one of several stated reasons for a denial is that the information requested from a local agency relates to a criminal investigation.

---

[8] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value.

8

However, we agree with Requester that the issue of jurisdiction is moot. The trial court conducted a *de novo* review of the Requester's appeal.[9]

The mootness doctrine requires that there be an actual case or controversy at all stages of review. The existence of a case or controversy requires:

(1)  A legal controversy that is real and not hypothetical;

(2)  A legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication; and

(3)  A legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

*Mistich v. Pennsylvania Board of Probation and Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004) (citing *Dow Chemical Company v. United States Environmental Protection Agency,* 605 F.2d 673, 678 (3d Cir. 1979)). "A controversy must continue through all stages of judicial proceedings, trial and appellate, and the parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Mistich,* 863 A.2d at 119 (citing *Lewis v. Continental Bank Corporation*, 494 U.S. 472, 477-78 (1990)). "Courts will not enter judgments or decrees to which no effect can be given." *Mistich*, 863 A.2d at 119. An exception to mootness will be found where conduct complained of is capable of repetition yet likely to evade judicial review, where the case involves issues of great public importance or where one party will suffer a detriment without the court's decision. *Id*. (citing *Horsehead Resource Development Company, Inc. v. Department of Environmental Protection*, 780 A.2d 856, 858 (Pa. Cmwlth. 2001), *appeal denied*, 796 A.2d 987 (Pa. 2002)).

---

[9] In reviewing a decision concerning a records request, the trial court's standard of review is *de novo*, and its scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 467-68 (Pa. 2013).

Here, any controversy that may have existed over which appeals officer had jurisdiction to hear Requester's appeal no longer exists. Final determinations on a request for local agency records, whether issued by the OOR or by the district attorney's designated appeals officer, are appealed to the court of common pleas for the county. Section 1302(a) of the Right-to-Know Law, 65 P.S. §67.1302(a). Here, the trial court held a *de novo* hearing and rendered its own findings of fact and conclusions of law.

In sum, the jurisdictional issue did not "continue through all stages of [these] judicial proceedings." *Mistich*, 863 A.2d at 119. The trial court resolved the dispute as it would have even if Requester had appealed to the district attorney's designated appeals officer. Because the issue of jurisdiction is moot and no exception to mootness applies, we need not consider the issue of jurisdiction. *Stuckley v. Zoning Hearing Board of Newtown Township*, 79 A.3d 510, 519 (Pa. 2013) (when the issues in a case are moot, any opinion issued by an appellate court would be merely advisory and, therefore, inappropriate).

## II.

The Borough argues, next, that the trial court erred in holding that the requested video was not exempt as a criminal or noncriminal investigative record under Section 708(b)(16) and (17) of the Right-to-Know Law, 65 P.S. §67.708(b)(16)-(17). The Borough asserts that the video was maintained as part of the investigation of Shultz. The Borough further asserts that because the video contains investigative information, it was exempt from public disclosure under Section 9106(c)(4) of CHRIA, 18 Pa. C.S. §9106(c)(4). Requester responds that the video is not a criminal or noncriminal investigative record because it was not created "during the course of an investigation to document the steps taken throughout[.]"

10

Requester Brief at 14. Requester further counters that "[a]n otherwise public record that becomes evidence in a criminal investigation does not inherently become a 'criminal investigative' record under 65 P.S. §[67.]708(b)(16)." Requester Brief at 14.

## A. Right-to-Know Law

The Right-to-Know Law requires state and local agencies to provide access to public records upon request. Section 302 of the Right-to-Know Law, 65 P.S. §67.302 ("A local agency shall provide public records in accordance with this act."). Section 102 of the Right-to-Know Law defines a "public record" as a

> record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708[, 65 P.S. §67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege.

65 P.S. §67.102. A "record" is further defined under the Right-to-Know Law as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.* There is no dispute that the video recording in the instant case is a "record" as defined in the Right-to-Know Law. The burden of proving that a "record" is exempt from public access is placed on the "local agency receiving a request by a preponderance of the evidence." Section 708(a)(1) of the Right-to-Know Law, 65 P.S. §67.708(a)(1). By this standard of proof, "the existence of a contested fact must

11

be more probable than its nonexistence." *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011). In addition, "[c]onsistent with the [Right-to-Know Law's] goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Office of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015).

The Right-to-Know Law exempts any agency record "relating to or resulting in a criminal investigation," including "[i]nvestigative materials, notes, correspondence, videos and reports." Section 708(b)(16)(ii) of the Right-to-Know Law, 65 P.S. §67.708(b)(16)(ii). The Right-to-Know Law does not define the phrase "criminal investigation." However, our Supreme Court has observed that the term "clearly and obviously refers to an official inquiry into a possible crime." *Grove II*, 161 A.3d at 893.

Section 708(b)(17)(ii) also exempts from disclosure "[a] record of an agency relating to a noncriminal investigation, including ... (ii) Investigative materials, notes, correspondence and reports." 65 P.S. §67.708(b)(17)(ii). The Right-to-Know Law does not define "noncriminal" or "investigation." A "noncriminal" investigation is one not intended to consider prosecution and, in this context, "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe." *Department of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). The inquiry, examination, or probe must be conducted as "part of the agency's official duties." *Id.* at 814.

Here, the surveillance camera in the holding cell recorded the commission of a crime by Shultz. Chief Encapera viewed the video, downloaded it, and took it to the district attorney for review. Encapera subsequently fired Shultz

12

for the incident and filed criminal charges against him. Thus, the video relates to both a criminal investigation and a noncriminal, *i.e.,* personnel, investigation.

The trial court held that because the video recording did "not chronicle the collection of evidence, witness interviews or any type of investigative information that took place *as part of a criminal investigation*[,]" it was not a criminal investigative record exempt under Section 708(b)(16)(ii) of the Right-to-Know Law. Trial Court op. at 7; R.R. 201a (emphasis in original). In so holding, the trial court relied upon *Grove I*, 119 A.3d 1102, where the requester sought access to two mobile video recordings (MVR) relating to a traffic accident. The Pennsylvania State Police denied the request for the MVRs claiming they were exempt as investigatory records. The OOR sustained the requester's appeal, and the State Police petitioned for this Court's review.

The State Police argued that the MVRs were criminal investigative records because they depicted a vehicle accident that resulted in traffic citations, *i.e.*, summary criminal offenses. We rejected this logic, noting that "[t]he mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under Section 708(b)(16) of the [Right–to–Know Law] or CHRIA." *Grove I*, 119 A.3d at 1108. An MVR may "have no investigative content." *Id*. However, an MVR may contain information relating to a criminal investigation, including "witness interviews, interrogations, intoxication testing and other investigative work...." *Id.* at 1109. Where a single MVR includes investigatory and non-investigatory information, "the agency must produce the record with the exempt information redacted." *Id*.

In *Grove I*, one MVR did not have an audio component; it showed only a trooper speaking to the drivers of the vehicles and photographing the crash scene.

13

We concluded it had no investigative information. The second MVR contained audio, including driver interviews, and video. We concluded that the video depiction of the conversations was not investigative, and not exempt, but the audio component could be redacted to the extent necessary to the criminal investigation.

On further appeal, our Supreme Court held that we correctly determined that MVRs are not automatically exempt from disclosure as criminal investigative records under Section 708 of the Right–to–Know Law or under CHRIA. Emphasizing that the State Police had the burden to demonstrate that an MVR was an investigative record, the Supreme Court held that the question must be determined on a case-by-case basis. *Grove II*, 161 A.3d at 894.[10]

More specifically, the Supreme Court held that the video components of the two MVRs were not exempt because they did not depict the accident itself. They showed only the state troopers at the crash scene, interacting with drivers and bystanders. *Id*. at 894. Although the troopers issued citations for Vehicle Code violations, the citations were based on witness interviews, not the video. Accordingly, the video portion of the MVRs was disclosable.

The Borough argues that the *Grove* cases are distinguishable because the MVRs did not capture the accident but rather its aftermath. By contrast, here, the surveillance camera recorded the *entire* confrontation between Shultz and Logan. Further, the State Police acknowledged in the *Grove* cases that the information for

---

[10] Shortly after the Supreme Court's pronouncement in *Grove II*, Senate Bill No. 560 was signed into law by Governor Wolf as Act No. 2017–22 of July 7, 2017. This act amended Title 42 of the Judicial Code by adding Chapter 67A. Section 67A03 limits the disclosure of law enforcement audio and video recordings. 42 Pa. C.S. §67A03. Section 67A06 mandates that when a law enforcement agency denies a request for access to an audio or video recording, the appeal is not taken to the OOR but to the court of common pleas. 42 Pa. C.S. §67A06. Because the trial court decided the instant case before Act No. 2017-22 was enacted, we hold that the act does not govern the instant case.

14

its criminal citations did not come from the video. Here, Chief Encapera relied upon the video recording to fire Shultz and file criminal charges against him. The video therefore relates to the subsequent criminal and noncriminal investigations against Shultz, even though it was not created as part of an investigation.

It is true, as the trial court observed, that the video recording was not created for an investigative purpose. Notably, in *Port Authority of Allegheny County v. Towne*, (Pa. Cmwlth., No. 92 C.D. 2017, filed September 12, 2017) (unreported), this Court considered, and rejected, this rationale for deeming a video recording disclosable. In *Towne*, the requester sought video recordings made by a bus camera that had recorded the requester's accident with the bus. The authority asserted that the recording was an exempt noncriminal investigative record because the authority had downloaded the video during its investigation of the incident. The OOR granted the requester access to the video.

This Court reversed and held that the video was exempt as a noncriminal investigative record. The authority's chief operating officer testified that a video recording from an authority bus is downloaded and reviewed only when an incident, claim, or accident is reported, thereby triggering an investigation. This Court further stated:

> Consistent with *Grove [II]*, the exempt status of the recordings at issue is not solely determined by the fact that they are created before an investigation and downloaded and reviewed only after an incident, claim or accident is reported thereby triggering an investigation. *Accordingly, we reject the OOR's rationale that, because the recordings were created before and independent of any investigation, "they cannot be said to exist 'merely or primarily' for investigative purposes and thus cannot be said to 'relate' to a noncriminal investigation...." If the OOR's somewhat circular reasoning was correct, then portions of the MVRs in Grove [II] never could have constituted investigative*

15

*records due to the [State Police's] recording and retention practice.*

*Towne*, slip op. at 9-10 (internal quotations omitted) (emphasis added).

For all of the foregoing reasons, we hold that the trial court erred in holding that the video recording was not exempt from disclosure under the criminal and noncriminal investigation exceptions in Section 708(b) of the Right-to-Know Law.

## B. CHRIA

The Borough further argues that Section 9106(c)(4) of CHRIA prohibits it from releasing the video to any person other than a criminal justice agency. The trial court rejected that argument, holding that because the video was not investigative, the restriction on disclosure set forth in Section 9106(c)(4) of CHRIA did not apply.

Generally, CHRIA governs the collection, maintenance, dissemination, disclosure and receipt of criminal history record information. As a matter of law, CHRIA prohibits disseminating "investigative information" to any persons or entities other than criminal justice agents and agencies. 18 Pa. C.S. §9106(c)(4). Specifically, Section 9106(c)(4) states:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa. C.S. §9106(c)(4). "Investigative information" is defined under CHRIA as "[i]nformation *assembled* as a result of the performance of any inquiry, formal or

16

informal, into a criminal incident or an allegation of criminal wrongdoing ...." 18 Pa. C.S. §9102 (emphasis added). The operative word in the above definition is "assembled," which means to "bring or gather together into a group or whole." *Pennsylvania State Police v. Kim*, 150 A.3d 155, 160 (Pa. Cmwlth. 2016) (citing Am. Heritage Dictionary 134 (2nd Coll. ed. 1985)).

Here, Chief Encapera gathered the information on the video by downloading it and taking it to the district attorney for an evaluation. Stated otherwise, Encapera "assembled" the criminal investigation information. The trial court therefore erred in holding that the video was not exempt under CHRIA as investigative information.

## III.

Finally, the Borough argues that the trial court erred by ruling that the video was not exempt from disclosure under the public safety, physical security, and personal security exceptions set forth in Sections 708(b)(1)-(3) of the Right-to-Know Law, 65 P.S. §67.708(b)(1)-(3).[11] In that regard, the Borough asserts that Encapera's testimony showed that disclosure of the video would "reasonably likely" jeopardize public safety; endanger physical security; or pose substantial and demonstrable risk to personal security. Borough Brief at 20.

Section 708(b)(2) of the Right-to-Know Law exempts from disclosure records "maintained by an agency in connection with … law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity[.]" 65 P.S. §67.708(b)(2). In order to satisfy this exemption, an agency must show, by a

---

[11] Although the Borough's final issue is not outcome determinative given our resolution of the first two issues, we address it for the sake of completeness.

preponderance of the evidence, that (1) the record at issue relates to a law enforcement or public safety activity; and (2) disclosure of the record would be "reasonably likely" to threaten public safety or a public protection activity. *Carey v. Department of Corrections*, 61 A.3d 367, 374-75 (Pa. Cmwlth. 2013). "In interpreting the 'reasonably likely' part of the test, as with all the security-related exceptions, we look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation." *Id.*

Section 708(b)(1)(ii) of the Right-to-Know Law also exempts from disclosure a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii). For this exemption to apply, an agency must show, by a preponderance of the evidence, "(1) a 'reasonable likelihood' of (2) a 'substantial and demonstrable risk' to a person's personal security." *Delaware County v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

Finally, Section 708(b)(3) of the Right-to-Know Law exempts from public access "[a] record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system…." 65 P.S. §67.708(b)(3).

In summary, all three exceptions incorporate a "reasonable likelihood" test. Here, Chief Encapera, the sole witness, testified that there are blind spots in the holding cell, which the camera does not capture. He stated that future prisoners, upon viewing the video, might be able to determine where the blind spots in the holding cell are and use that knowledge to conceal drugs or weapons not discovered by the police. However, Encapera testified that prisoners in the holding cell are searched prior to entering the cell. N.T. 28; R.R. 58a. While in the holding cell, the

18

prisoners are "handcuffed and have a leg shackle on them so they can't roam around." *Id*. It is unclear how a prisoner secured in the holding cell could access the blind spots in the cell and commit an act that could endanger safety or security.

An agency must offer more than speculation or conjecture to establish the security-related exceptions under the Right-to-Know Law. *Lutz v. City of Philadelphia*, 6 A.3d 669, 676 (Pa. Cmwlth. 2010). The Borough failed to satisfy its burden of proving that the video recording is exempt from disclosure under the security-related exceptions under the Right-to-Know Law, 65 P.S. §67.708(b)(1)-(3). Its evidence consisted of speculation, as the trial court correctly held.

### Conclusion

Because we conclude that the trial court erred in ruling that the video recording was not exempt from disclosure under the criminal and noncriminal investigation exceptions in Section 708(b)(16) and (17) of the Right-to-Know Law, 65 P.S. §67.708(b)(16)-(17), or Section 9106(c)(4) of CHRIA, 18 Pa. C.S. §9106(c)(4), we reverse the trial court's March 21, 2017, order.

_____
MARY HANNAH LEAVITT, President Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California Borough,                    :
                Appellant          :
                              :
           v.             : No. 496 C.D. 2017
                              :
Andrew Glenn Rothey                 :

# **O R D E R**

AND NOW, this 25th day of April, 2018, the order of the Court of Common Pleas of Washington County dated March 21, 2017, in the above-captioned matter is REVERSED.

                                        _____

                                        MARY HANNAH LEAVITT, President Judge