IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Mary Johnson : 
From the Denial of Request : No. 97 C.D. 2020
Under the Right to Know Law : Argued: April 12, 2021
 : 
Appeal of: Mary Johnson : 

BEFORE: HONORABLE P. KEVIN BROBSON, President Judge
 HONORABLE MARY HANNAH LEAVITT, Judge (P)
 HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE LEAVITT                                    FILED: May 19, 2021

Mary Johnson (Requester) appeals an order of the Court of Common Pleas of Cumberland County (trial court) that denied her request for records related to a police welfare check on her mother. In so holding, the trial court affirmed the final determination of the Appeals Officer for the Police Department of East Pennsboro Township (Police Department) that the requested records were exempt from disclosure under Section 708(b)(17) of the Right-to-Know Law,[1] because they related to a noncriminal investigation. On appeal, Requester argues that the police officer's welfare check was not done in the course of his official duties, and, thus, the exemption for noncriminal investigation records did not apply to her record request. For the reasons that follow, we affirm.

On August 16, 2019, Requester submitted a Right-to-Know request to the Police Department for records related to a "[p]olice incident at home of Delphine Fake – 568 Magaro [Road,] Enola[,] on March 27, 2018[.] Also Delphine Fake at [p]olice [s]tation on March 27, 2018[.]" Reproduced Record at 5a (R.R. __). On August 20, 2019, the Chief of Police, Mark Green, denied the request for the stated

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §67.708(b)(17).

reason that the records were related to a noncriminal investigation and, thus, exempt from disclosure under Section 708(b)(17) of the Right-to-Know Law.

On September 4, 2019, Requester appealed Chief Green's denial of the request to the Police Department's Right-to-Know Law Appeals Officer. Requester contended that her request did not relate to a noncriminal investigation "because there was nothing to investigate, and there was no indication that the record[s] resulted from a 'complaint' submitted to the police department." R.R. 7a. Requester asserted that the information in the records had been disclosed to her brother.

On September 26, 2019, the Appeals Officer, Chief Deputy District Attorney Courtney E. Hair LaRue, denied Requester's appeal. LaRue confirmed Chief Green's conclusion that the request related to "investigative material, notes, correspondence, and reports," which are exempt from disclosure under Section 708(b)(17) of the Right-to-Know Law. R.R. 8a. LaRue also explained that the requested records may "contain information that would constitute an unwarranted invasion of privacy to those parties involved." *Id*.

Requester appealed, and the trial court conducted a hearing on December 18, 2019. At the hearing, Requester testified that she made the request to find out who requested "the police to [go] to [her mother's] house[.]" Notes of Testimony, 12/18/2019, at 6 (N.T. __); R.R. 16a. She understood that the police had gone to the house "to do a welfare check[,]" *i.e.*, to see if her mother "was okay." N.T. 6-7; R.R. 16a-17a. Requester testified that the Police Department had already shared this information with her brother.

Chief Green testified that the Police Department sent an officer to the home of Requester's mother to do a welfare check and did not find "that there was anything wrong with her[.]" N.T. 11; R.R. 21a. He testified that the officer's report

2

of the welfare check included sensitive information. Chief Green explained his interaction with Requester's brother as follows:

> All I was willing to discuss was that the police department checked the welfare of his mother and that we did not find that there was anything wrong with her from the police department standpoint and that we would not do any further investigation on this[.]

N.T. 11; R.R. 21a. Chief Green testified that Requester's brother requested the officer's report, which he also denied.

The trial court concluded that the Police Department met its burden of proving that the records were exempt from disclosure because they related to a noncriminal investigation. The trial court explained that

> the welfare check involved the police department taking a complaint from a confidential source, and the department officers having to meet with and interview [Requester's] mother to follow-up on or otherwise "investigate" the complaint and ultimately author a report on the results of that investigation.

Trial Court Op. at 1-2. After an *in camera* review of the requested records, the trial court confirmed that the request was for "an investigative report generated from the welfare check performed by the [Police D]epartment" and, therefore, protected from disclosure under Section 708(b)(17) of the Right-to-Know Law. Trial Court Op. at 2 n.2. Requester then filed the instant appeal.

On appeal,[2] Requester raises one issue. She argues that a report generated in the course of a police welfare check is a public record subject to

---

[2] This Court reviews a trial court's decision to determine whether findings of fact are supported by substantial evidence, whether the trial court committed an error of law, or whether the trial court abused its discretion. *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019) (quotation omitted). This Court's scope of review for a question of law is plenary. *Id*.

disclosure under the Right-to-Know Law. It is not exempt as related to a noncriminal investigation because police are authorized to do only criminal investigations and motor vehicle stops. Requester also argues that rather than deny her request, the Police Department should have disclosed the records in redacted form after removing the portions that related to the investigation.

We begin with a review of the Right-to-Know Law. It requires local agencies to provide access to public records upon request. Section 302(a) of the Right-to-Know Law, 65 P.S. §67.302(a). Section 102 of the Right-to-Know Law defines "public record" as a

> record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708[, 65 P.S. §67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege.

65 P.S. §67.102. A "record" is further defined under the Right-to-Know Law as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.*

Records in the possession of a local agency are presumed public and disclosable unless exempt under Section 708 of the Right-to-Know Law, 65 P.S. §67.708. Section 305(a) of the Right-to-Know Law, 65 P.S. §67.305(a). The local

4

agency has the burden of proving that a record is exempt by a preponderance of the evidence. Section 708(a)(1) of the Right-to-Know Law, 65 P.S. §67.708(a)(1).

Section 708(b)(17) of the Right-to-Know Law exempts the following records from disclosure:

> *A record of an agency relating to a noncriminal investigation, including*:
>
> (i)   Complaints submitted to an agency.
>
> (ii)  *Investigative materials, notes, correspondence and reports*.
>
> (iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), [*as amended*, 43 P.S. §§1421-1428,] known as the Whistleblower Law.
>
> (iv)  A record that includes information made confidential by law.
>
> (v)   Work papers underlying an audit.
>
> (vi)  A record that, if disclosed, would do any of the following:
>
>> (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.
>>
>> (B) Deprive a person of the right to an impartial adjudication.
>>
>> (C) Constitute an unwarranted invasion of privacy.
>>
>> (D) Hinder an agency's ability to secure an administrative or civil sanction.

5

> (E) Endanger the life or physical safety of an individual.

65 P.S. §67.708(b)(17) (emphasis added).

The Right-to-Know Law does not define "noncriminal" or "investigation." This Court has held that a noncriminal investigation is "one not intended to consider prosecution and, in this context, 'investigation' means 'a systematic or searching inquiry, a detailed examination, or an official probe.'" *California Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018) (quoting *Department of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010)). "The inquiry, examination, or probe must be conducted as 'part of the agency's official duties.'" *California Borough*, 185 A.3d at 465 (quoting *Department of Health*, 4 A.3d at 814).

The parties agree that the Police Department is a local agency and that the request was for a public record. The only question is whether the records related to a noncriminal investigation and, as such, are exempt from disclosure.

Requester argues that welfare checks are not exempt as related to a noncriminal investigation because welfare checks are not part of a police department's official duties. *California Borough*, 185 A.3d at 465. She contends that police departments are not charged with performing health and social services. Requester Brief at 11. The Police Department was created under The First Class Township Code,[3] and Requester argues that the statute limits the authority of a police officer to the conduct of criminal investigations that can lead to a fine or penalty. The Police Department responds that conducting a welfare check is an official duty

---

[3] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§55101-58502.

6

because police are charged with the duty to protect the safety and welfare of the public.

The First Class Township Code authorizes a township's board of commissioners to "appoint … the members of the township police force." Section 1401(a) of The First Class Township Code, 53 P.S. §56401(a). Township police officers

> *shall have those powers and duties as are granted to police officers under the laws of this Commonwealth*, the rules of the Supreme Court or the ordinances of the township, for the violation of which a fine or penalty may be imposed.

Section 1403 of The First Class Township Code, 53 P.S. §56403 (emphasis added). Further, the statute commonly known as the Municipal Police Jurisdiction Act[4] gives a municipal police officer

> *the power and authority to* enforce the laws of this Commonwealth or otherwise *perform the functions of that office anywhere within his primary jurisdiction as to*:
>
> > (1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.
> >
> > (2) *Any other event that occurs within his primary jurisdiction* and which reasonably requires action on the part of the police *in order to preserve*, *protect or defend persons* or *property or to otherwise maintain the peace and dignity of this Commonwealth*.

42 Pa. C.S. §8952 (emphasis added).

---

[4] 42 Pa. C.S. §§8951-8955.

7

Pennsylvania appellate courts have given broad construction to the statutes that confer authority upon police officers. In *Commonwealth v. Livingstone*, 174 A.3d 609, 629 (Pa. 2017), our Supreme Court stated that "police officers engage in a myriad of activities that ensure the safety and welfare" of the public. These activities include "first aid provider, social worker, crisis intervener, family counselor, youth mentor and peacemaker[.]" *Id.* (quoting *State v. McCormick*, 494 S.W.3d 673, 683 (Tenn. 2016)). The Supreme Court further explained that police officers have the "duty to protect people, not just from criminals, but also from accidents, natural perils and even self-inflicted injuries." *Id*. The Pennsylvania Superior Court has specifically explained that society expects that "a police officer's duty to serve and protect the community he or she patrols *extends beyond enforcement of the Crimes Code*[5] or Motor Vehicle Code[6] and includes helping citizens[.]" *Commonwealth v. Conte*, 931 A.2d 690, 693 (Pa. Super. 2007) (emphasis added). Police officers are regularly dispatched to check on the welfare of occupants of homes and cars. *See, e.g.*, *Commonwealth v. Sami*, 243 A.3d 991 (Pa. Super. 2020) (police officers dispatched to do welfare check after receiving a report from a tenant that another tenant in the apartment had not been seen for several days).

Requester cites two specific statutory provisions to support her argument that a welfare check does not constitute an official duty of a police

---

[5] 18 Pa. C.S. §§101-9546.
[6] 75 Pa. C.S. §§101-9805.

department. One statutory provision authorizes criminal investigations.[7] The other statutory provision authorizes traffic arrests.[8] This is not a persuasive argument.

First, the cited provisions are not the exclusive bases for a police officer's official duties. Requester fails to consider the more relevant statutory provisions, such as those that authorize the police to "protect" persons and "maintain

---

[7] At the time Requester made her request, Section 1403 of The First Class Township Code provided the following with regard to powers of police officers:

> Policemen shall be ex-officio constables of the township and may, without warrant and on view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous, or disorderly conduct or drunkenness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any of the ordinances of the township for the violation of which a fine or penalty is imposed.

*Former* 53 P.S. §56403. Section 1403 was amended by the Act of October 29, 2020, P.L. 782, and became effective in 60 days.

[8] This provision of the Vehicle Code, states, in pertinent part, as follows:

> (b) Authority of police officer.--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

> (c) Inspection.--Any police officer or authorized department employee may, during business hours or at any other time in which work is being conducted or work is being performed, inspect any vehicle, or major component part for which records are required to be kept under subsection (d) [(relating to records)], in any garage or repair shop or on the premises of any dealer, miscellaneous motor vehicle business, salvage motor vehicle auction or pool operator, salvor, scrap metal processor, or other public place of business which deals in the trade of vehicles or major component parts for the purpose of:

>> (1) locating stolen vehicles or parts of vehicles or major component parts with identification numbers, Federal certification labels, anti-theft labels or parts stickers removed, altered or falsified; or

>> (2) inspecting the records required to be kept under subsection (d).

75 Pa. C.S. §6308(b), (c).

the peace." 42 Pa. C.S. §8952. Second, it has long been understood that the power of officers "is derived … from the common law and acts of assembly" as well as municipal ordinance. *Miller v. Hastings Borough*, 25 Pa. Super. 569, 573 (1904). A police officer's duties to protect persons and maintain the peace includes the duty to do a welfare check.

This Court's holding in *Taylor v. Pennsylvania State Police* (Pa. Cmwlth., No. 623 C.D. 2019, filed January 10, 2020) (unreported), is also instructive.[9] There, a Pennsylvania State Trooper responded to a 911 hang-up call. The trooper went to the location of the call and determined that no one was in need of emergency services. A request was made for the trooper's report, and the State Police denied the request, explaining that it was exempt from public disclosure under Section 708(b)(17) of the Right-to-Know Law, as a record relating to a noncriminal investigation. The requester appealed, and the Office of Open Records denied her appeal. This Court affirmed, explaining that the requested documents "detailed that [State Police] responded to a 911 hang-up call made from [the r]equester's home … and that [the t]rooper [], in his official … capacity, conducted a 'systematic or searching inquiry, a detailed examination or an official probe' (i.e., an investigation), … , and concluded that no one was in need of emergency services." *Taylor*, slip op. at 10.

Likewise, here, the Police Department responded to a citizen's report that an individual within the Police Department's jurisdiction may need emergency services. As in *Taylor*, the officer investigated to ascertain the needs, if any, of the individual that was the subject of the report. We adopt *Taylor's* holding that a report

---

[9] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

10

generated in response to a call to the police is a record that relates to a noncriminal investigation. Section 708(b)(17) of the Right-to-Know Law, 65 P.S. §67.708(b)(17).

Section 708(b)(17)(ii) of the Right-to-Know Law exempts "[i]nvestigative materials, notes, correspondence and reports" from disclosure to the public. 65 P.S. §67.708(b)(17)(ii). The records sought by Requester were generated as a part of an investigation into the safety of Requester's mother in response to a complaint from a confidential source. Trial Court Op. at 2. After the officer met with and interviewed Requester's mother, the officer determined that emergency services were not necessary. Thereafter, the officer prepared a report detailing the investigation. *Id*. at 1-2. The trial court conducted an *in camera* review of the report and was satisfied "that it was an investigative report generated from the welfare check performed by the [Police D]epartment." *Id*. at 2 n.2. We hold that the trial court did not err in affirming the determination of the Appeals Officer for the Police Department.

Requester argues, in the alternative, that even if the requested records are exempt, then the Police Department should have provided her with a redacted copy of the record. She contends that redaction, not rejection, was the proper response to her records request. However, Requester did not raise this issue in her appeal to the Appeals Officer, as required by Section 1101(a)(1) of the Right-to-Know Law, 65 P.S. §67.1101(a)(1). The first time Requester raised this issue was in her brief to this Court.

Section 1101(a)(1) requires that an "appeal [to the appeals officer] shall state the grounds upon which the requester asserts that the record is a public record … and shall address any grounds stated by the agency for ... denying the request."

11

65 P.S. §67.1101(a)(1). "A requester waives arguments that are not raised in her Section 1101 appeal." *Crocco v. Pennsylvania Department of Health*, 214 A.3d 316, 321 (Pa. Cmwlth. 2019).

Before the Appeals Officer, Requester argued that the records of the Police Department's welfare check on her mother were not exempt because a welfare check is not an official duty of the Police Department and because the information in the requested records had already been disclosed to another family member. She did not argue that she should be provided with the report in a redacted form. Thus, this argument is waived.

In sum, the Police Department's records related to a welfare check on Requester's mother are exempt from disclosure under the noncriminal investigation exemption in Section 708(b)(17) of the Right-to-Know Law. Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Mary Johnson : 
From the Denial of Request : No. 97 C.D. 2020
Under the Right to Know Law : 
                               : 
Appeal of: Mary Johnson : 

## **O R D E R**

AND NOW, this 19th day of May, 2021, the order of the Court of Common Pleas of Cumberland County, dated December 18, 2019, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita