IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Bucks                   :
                                            :
          v.                    : No. 447 C.D. 2022
                                            : Argued: September 11, 2023
Brett Sholtis,                   :
               Appellant   :

BEFORE:     HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE STACY WALLACE, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                            FILED: October 19, 2023

Brett Sholtis (Sholtis), an investigative journalist, appeals the order of the Bucks County Court of Common Pleas (trial court) dated April 4, 2022, which reversed the final determination of the Pennsylvania Office of Open Records (OOR) and concluded video of an incident at the Bucks County Correctional Facility (Correctional Facility) was exempt from disclosure under the Right-to-Know Law (Law).[1] After careful review, we affirm.

## I. Background

The Correctional Facility received a request from Sholtis on July 17, 2020, seeking video of an incident that occurred there on May 20, 2020. Sholtis alleged

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

the incident involved corrections officers using pepper spray on an inmate. Bucks County responded through its office of open records, denying Sholtis's request by letter dated July 23, 2020. Bucks County explained the disputed video was exempt from disclosure under, among other things, the criminal investigation exception at Section 708(b)(16) of the Law, 65 P.S. § 67.708(b)(16).

Sholtis appealed to the OOR, challenging Bucks County's application of the criminal investigation exception. Bucks County defended its decision by submitting the affidavit of District Attorney, Matthew Weintraub (DA Weintraub). According to DA Weintraub, his office (DA's Office) became aware in June 2020 of allegations that staff at the Correctional Facility mistreated an inmate, and it assigned a detective to investigate. Reproduced Record (R.R.) at 4a. DA Weintraub reviewed the video from the Correctional Facility, "along with other materials obtained during [the] criminal investigation," and "determined that criminal charges were not warranted." *Id.* at 4a-5a.

The OOR issued a final determination on October 16, 2020, concluding the criminal investigation exception did not apply. The OOR reasoned Sholtis did not submit his request to the DA's Office, which had its own open records officer, but to the Correctional Facility, which did not conduct an investigation. R.R. at 12a. In the OOR's view, "[t]o hold that a record sought from an agency is exempt merely because it was reviewed at some point during an investigation conducted by a different agency, would significantly expand the criminal investigation exemption beyond our existing precedent." *Id.* (citing *Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017)).

Bucks County filed a petition for review to the trial court, contending once again that the disputed video was exempt from disclosure under the criminal

investigation exception. Bucks County also contended releasing the video would endanger Correctional Facility staff and inmates, rendering it exempt under the safety and security exceptions at Section 708(b)(1)(ii), (2), and (3) of the Law, 65 P.S. § 67.708(b)(1)(ii), (2), and (3). Bucks County submitted the affidavit of Deputy Director of the Bucks County Department of Corrections, David Kratz (Kratz). Kratz described the disputed video as a recording of a "use of force" event, created using a handheld camera, which depicted the Correctional Facility's policies and procedures. R.R. at 14a-16a. He averred public disclosure of this information would create a safety risk at the Correctional Facility because it could be used "to facilitate security breaches, including attacks upon other offenders, staff, providers, or the public[;] transfer or hide contraband[;] evade responsive measures by prison staff[;] or propagate other dangerous misconduct."[2] Kratz Aff. ¶ 22.

The trial court held an evidentiary hearing on December 16, 2021, at which Kratz was the sole witness.[3] Kratz testified the Correctional Facility videotapes use of force events "for the safety of the offender and the safety of the staff," and because the videos serve as "an investigative and training tool." R.R. at 140a-41a. He explained the Department of Corrections employs investigators who partner with Bucks County detectives to investigate alleged criminal behavior in the Correctional Facility and file criminal complaints. *Id.* at 142a-44a, 186a, 198a-99a. These investigators also review use of force events "to make sure [the Correctional Facility is] in compliance and not going outside of [its] policies and procedures." *Id.* at 142a.

---

[2] The last page of Kratz's affidavit, which includes part of this quote, is absent from the reproduced record. The affidavit is available in full in the original record.

[3] By the time of the hearing, Kratz had become the Director of the Bucks County Department of Corrections, rather than the Deputy Director. R.R. at 137a.

3

Kratz testified the Correctional Facility performed an "internal due diligence" investigation of the use of force event in this case. R.R. at 145a. In addition, because there were "some inquires made," the Correctional Facility forwarded the disputed video to the DA's Office. *Id.* at 144a. Kratz explained he did not personally review the video until after Sholtis requested it, because "[t]hat's done and only brought to [his] attention if it's something that's rising to the level of going to the county detectives or criminal investigation or civil rights violations."[4] *Id.* at 188a-89a.

Importantly, Kratz opined releasing the disputed video would endanger the safety and security of Correctional Facility staff and inmates. Kratz testified the video revealed "secured areas" of the Correctional Facility and the locations of cameras. R.R. at 151a, 175a, 190a, 205a-06a. If inmates "were contemplating doing something illicit," he explained, knowledge of the Correctional Facility's camera layout would allow them "to go to a place where maybe the camera doesn't have the best view or maybe has an obstructed view." *Id.* at 176a, 202a, 206a. The video also revealed the Correctional Facility's policies and procedures for handling use of force events, a type of information that "has been used historically . . . to create diversions in aiding escapes and things like that."[5] *Id.* at 149a, 177a, 193a-94a.

The trial court reversed the OOR's final determination by order dated April 4, 2022, concluding the disputed video was exempt from disclosure. Initially, the trial court found the video was exempt under the criminal investigation exception. R.R. at 264a. It reasoned the DA's Office conducted an official inquiry into possible

[4] It appears the DA's Office began its criminal investigation in June 2020, before Sholtis submitted his request for the disputed video on July 17, 2020. *See* R.R. at 1a, 4a. The record includes a news article dated July 8, 2020, indicating the investigation found no criminal misconduct. *Id.* at 48a.

[5] After the hearing, by order dated December 27, 2021, the trial court directed Bucks County to produce the disputed video for *in camera* review. Bucks County complied.

4

criminal activity depicted in the video. *Id.* at 264a-65a. The trial court rejected the OOR's conclusion that a record is not exempt unless the agency receiving the request conducted an investigation itself. *Id.* at 266a. The Law did not contain language supporting that interpretation, the trial court reasoned, which "would effectively eliminate the criminal investigation exemption for any agency [that] could not perform its own criminal investigation and needed to rely on the [DA's] Office." *Id.*

The trial court further found the disputed video was exempt under the safety and security exceptions. It explained the video contained "a significant amount of information relating to the security of the physical structure of [the Correctional Facility], the procedures and processes associated with a planned use of force event, and the specific individuals involved in this particular use of force event." R.R. at 269a. The trial court credited Kratz's testimony that releasing this type of information could create an "unsafe environment" by facilitating security breaches, escapes, damage to physical structures, or violent attacks. *Id.* at 270a. The trial court expressed particular concern that the video depicted policies and procedures of corrections officers, equipment the officers used, positions of cameras, and the Correctional Facility's layout, including locations of doors and secured areas. *Id.* at 271a-72a.

Sholtis appealed to this Court.[6, 7] He now challenges the trial court's finding that the disputed video was exempt from disclosure under the criminal investigation exception at Section 708(b)(16) and the safety and security exceptions at Section

---

[6] Bucks County submitted the disputed video to this Court for *in camera* review. We have considered it when reaching our decision.

[7] The Abolitionist Law Center and Pennsylvania Institutional Law Project have filed a joint *amicus curiae* brief supporting Sholtis's appeal.

5

708(b)(1)(ii), (2), and (3). Sholtis's Br. at 4, 7-20. In the alternative, he argues the video should be released with redactions. *Id.* at 4, 9, 20-24.

## II. Discussion

When a trial court reviews the OOR's final determination regarding records of a local agency, it serves as the ultimate fact-finder and decides the matter *de novo*. *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63 (Pa. 2020). In other words, the trial court owes the OOR no deference. *Id.* This Court reviews the trial court's decision for an abuse of discretion. *Id.* at 665. An abuse of discretion exists only if the trial court "overrides or misapplies the law; exercises manifestly unreasonable judgment; or manifests partiality, bias, or ill will." *Id.* (citing *Van Dine v. Gyuriska*, 713 A.2d 1104, 1105 (Pa. 1998)).

Records in possession of Commonwealth and local agencies are presumed to be public. *Pa. Pub. Util. Comm'n v. Friedman*, 293 A.3d 803, 814-15 (Pa. Cmwlth. 2023) (citing Section 305(a) of the Law, 65 P.S. § 67.305(a)). The burden rests on the agency to prove by a preponderance of the evidence that one of the Law's exceptions applies.[8] *Cal. Univ. of Pa. v. Schackner*, 168 A.3d 413, 417 (Pa. Cmwlth. 2017) (quoting *Brown v. Pa. Dep't of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015)); *see* Section 708(a)(1) of the Law, 65 P.S. § 67.708(a)(1). Courts must construe the exceptions narrowly, consistent with the Law's "goal of promoting government transparency and . . . remedial nature." *Cal. Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018) (quoting *Off. of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (*en banc*)).

---

[8] An agency meets its burden if it proves, "even by the smallest amount," that it is more likely than not the record is exempt from disclosure. *See Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 999 n.25 (Pa. 2022); *Del. Cnty. v. Schaefer ex. rel. Phila. Inquirer*, 45 A.3d 1149 (Pa. Cmwlth. 2012).

**A. The safety and security exceptions**

We focus our analysis on the Law's safety and security exceptions, which Sholtis addresses in his second issue on appeal. Sholtis argues any alleged safety and security concerns were insufficiently specific and did not have a reasonable connection to the disputed video's release. Sholtis's Br. at 17. Citing this Court's unpublished decision in *York County v. Coyle* (Pa. Cmwlth., No. 182 C.D. 2020, filed August 6, 2021),[9] he argues Bucks County and the trial court adopted an "attenuated chain of causation," which depended on an unlikely "parade of horribles" for any safety and security threats to arise. *Id.* at 18. Sholtis insists an inmate could learn the same type of safety and security information simply by observation and word of mouth. *Id.* at 19.

Under each of the safety and security exceptions, an agency must establish the "reasonable likelihood" of an alleged harm. *Rothey*, 185 A.3d at 468. Speculation and conjecture do not suffice. *Id.* (citing *Lutz v. City of Phila.*, 6 A.3d 669, 676 (Pa. Cmwlth. 2010)). The exceptions provide as follows, in relevant part:

> **(b) Exceptions.--**Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> > (1) A record, the disclosure of which:
> >
> > > . . . .
> > >
> > > (ii) would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

---

[9] *See* Section 414(a) of the Commonwealth Court Internal Operating Procedures, 210 Pa. Code § 69.414(a) ("Parties may . . . cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

(2) A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

(3) A record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system . . . .

65 P.S. § 67.708(b)(1)(ii), (2), and (3).

Here, our review of the record supports the trial court's finding that releasing the disputed video would be reasonably likely to endanger Correctional Facility staff and inmates under Section 708(b)(1)(ii). The trial court considered Kratz's affidavit and testimony, which described the contents of the video and the risks attendant to its release. Kratz provided specific examples of these risks, including the possibility that individuals could use information from the video to facilitate attacks on staff and inmates, "evade responsive measures by prison staff," conduct illicit activity in areas the Correctional Facility's cameras cannot observe, or create diversions to aid in escapes. *See* Kratz Aff. ¶ 22; R.R. at 149a, 176a-77a, 193a-94a, 202a-06a.

It is important to add that our unpublished decision in *Coyle* belies, rather than supports, Sholtis's arguments. In that case, we reversed a trial court order concluding the "use of force policies . . . and the policies governing confrontations with mentally unstable individuals" for York County Prison were subject to disclosure. *Coyle*, slip op. at 14-16. We reasoned the policies "directly relate to potential confrontations between inmates and staff members," and, accordingly, "their disclosure 'would be reasonably likely to result in a substantial and

8

demonstrable risk of physical harm to or the personal security' of those staff members." *Id.*, slip op. at 16 (quoting 65 P.S. § 67.708(b)(1)(ii)).

Our *in camera* review of the disputed video is also significant. The video this Court received is comprised of several computer files, which relate to separate use of force events on May 11, 2020, and May 20, 2020.[10] In the use of force event on May 11, 2020, a corrections officer directs an inmate to uncover her cell door window, warns her that "OC spray will be deployed" if she does not comply, and then uses the spray from outside the cell. Eventually, a special team of corrections officers arrives, enters the cell, and removes the inmate. The team takes the inmate to a shower and afterward restrains her for a medical evaluation. The video ends with corrections officers moving to a secured area.

The use of force event on May 20, 2020, is similar, although the recording does not clearly depict a corrections officer using "OC spray." A special team arrives at the inmate's cell, removes her, takes her to a shower, and afterward restrains her for a medical evaluation. While in a secured area, the supervising corrections officer indicates this use of force was necessary because the inmate attempted to harm herself. In total, our *in camera* review confirms the disputed video reveals sensitive safety and security information, particularly Correctional

---

[10] Sholtis initially requested video of a single incident occurring on May 20, 2020, during which the inmate was "hit with pepper spray." R.R. at 1a. It is unclear why we received videos for both May 11, 2020, and May 20, 2020. It may be the incident in question actually occurred on May 11, 2020, and Bucks County included the May 11, 2020 video because that is what it believed Sholtis was attempting to obtain.

Facility policies and procedures, and the location of a secured area within the Correctional Facility.[11, 12]

## B. Redaction

Sholtis argues in the alternative that the disputed video should be redacted and released in part even if the Law's exceptions apply. Sholtis's Br. at 20-23. Sholtis suggests Bucks County's safety and security concerns related only to material at the beginning and end of the video, such as "the limited portions . . . where officers walked to the cell." *Id.* at 21-22 (emphasis omitted). He proposes Bucks County could redact those portions while releasing the rest. *Id.*

Sholtis is correct that agencies must release records with redactions when only part of a record is exempt from disclosure. *See* Section 706 of the Law, 65 P.S. § 67.706. Nonetheless, the trial court addressed the possibility of redaction in response to Sholtis's concise statement of errors complained of on appeal, concluding "there is no portion of the [disputed v]ideo which is not covered by one or more" of the Law's exceptions. Trial Ct. Op., 6/30/22, at 20.[13] Our *in camera* review demonstrates that a person could glean information about the Correctional Facility's policies and procedures from the entire video, not just the portion before corrections officers arrive at the inmate's cell.

---

[11] The recordings of the two use of force events are graphic, as they depict the inmate in a state of undress while seemingly suffering a mental health crisis. We note, with concern, the importance of the inmate's privacy rights and the apparent lack of due process protections in this proceeding.

[12] Because we affirm the trial court's decision with respect to the safety and security exceptions, we do not address Sholtis's additional argument regarding the criminal investigation exception.

[13] The trial court's June 30, 2022 opinion is not available in the reproduced record.

### III. Conclusion

The trial court is the ultimate fact-finder in this matter, and we must defer to its decision absent an abuse of discretion. *Am. C.L. Union of Pa.*, 232 A.3d at 662-65. We discern no abuse of discretion under the circumstances of this case, where the trial court heard Kratz's live testimony, reviewed the disputed video, and reached a conclusion consistent with our reasoning in *Coyle*. We therefore affirm the trial court's decision that the video was exempt from disclosure, in its entirety.

_____
STACY WALLACE, Judge

Judge Covey did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Bucks           :
                           :
      v.               : No. 447 C.D. 2022
                           :
Brett Sholtis,          :
              Appellant  :

# **O R D E R**

**AND NOW**, this 19th day of October 2023, the order dated April 4, 2022, by the Bucks County Court of Common Pleas is **AFFIRMED**.

_____
STACY WALLACE, Judge