IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Picarella Jr.,             :
                Petitioner          :
                                 :    No. 93 C.D. 2021
       v.                       :
                                 :    Submitted: July 16, 2021
Department of Corrections       :
(Office of Open Records),        :
                Respondent     :

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: December 30, 2021

Charles Picarella Jr., *pro se*, petitions for review of the January 8, 2021 Final Determination of the Office of Open Records (OOR), which granted in part and denied in part Picarella's appeal of the Department of Corrections' (Department) partial denial of his Right-to-Know Law (RTKL)[1] request. We affirm.

Picarella is an inmate at the State Correctional Institution at Mahanoy. On October 1, 2020, Picarella filed a RTKL request with the Department, seeking:

> Any and all records related to the criteria used by the Department to determine whether a prisoner incarcerated within the Department will receive a positive or negative recommendation for parole when such determination is submitted to the Pennsylvania Board of Probation and

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Parole,[2] including but not limited to quantitative scoring instruments.

(OOR Final Determination at 1-2.)

On October 26, 2020, the Department granted Picarella access to several Department policies, but partially denied Picarella's request with respect to certain sections of Department Policy 11.5.1. The Department contended that disclosure of those sections of the policy would jeopardize personal security and public safety, and that they are thus exempt from disclosure under section 708(b)(1)(ii)[3] and (b)(2)[4] of the RTKL, 65 P.S. §67.708(b)(1)(ii), (b)(2).[5]

On November 24, 2020, Picarella appealed to the OOR. On December 16, 2020, the Department submitted a position statement, in which it reiterated its stated grounds for denial with respect to the withheld sections of Policy 11.5.1. In

---

[2] The Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board by sections 15 and 16.1 of the Act of December 18, 2019, P.L. 776. *See* sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa.C.S. §§6101, 6111(a).

[3] Section 708(b)(1)(ii) of the RTKL exempts from disclosure a record which "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii). We refer to this exemption herein as the "personal security exemption."

[4] Section 708(b)(2) of the RTKL exempts from disclosure a "record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity . . . ." 65 P.S. §67.708(b)(2). We refer to this exemption herein as the "public safety exemption."

[5] The Department initially contended that the relevant sections of the policy were additionally exempt from disclosure under section 708(b)(16) and (b)(17), 65 P.S. §67.708(b)(16), (b)(17), because they relate to criminal and noncriminal investigations. However, the Department did not develop this position on appeal to the OOR, so the OOR deemed the Department's argument waived in that regard. (OOR Final Determination at 2 n.3.) This exemption is not at issue in the instant appeal.

support, the Department submitted an affidavit of Denise Wood, the Department's Records Administrator. Ms. Wood described the relevant material as follows:

> The responsive record[] to Mr. Picarella's request is Department Policy 11.5.1 on Records Office Operations, specifically Sections 1, 2, 5, 6, and 9.
>
> ***
>
> The requested Sections of 11.5.1 are confidential policy and are not made available to the public. . . .
>
> The requested Sections of 11.5.1 are confidential to protect against manipulation by inmates and/or their accomplices in the general public.
>
> The confidential Sections of policy 11.5.1 are maintained by the Department in connection with its official law enforcement function of supervising the incarceration of inmates in a safe and secure manner.
>
> Section 1 of 11.5.1 (Processing of Receptions)[] exists as part of the Department's law enforcement authority to aid staff with a variety of inmate reception situations to ensure that inmates are being properly committed to the Department and classified appropriately.
>
> Section 1 describes the Department's policy and procedure for a variety of receptions such as initial receptions, parole violators, [out-of-state] parole violators, community parole center program, county prison transfers, return from authorized temporary absence, inter-facility transfer, detentioners, interstate corrections compact receptions, bail returns, . . . return of inmate following re-trial or re-sentence, and escape returns.
>
> ***
>
> Additionally, the 11.5.1 Section 1 outlines how staff should handle sentence computation and re-computations.

3

Section 2 of 11.5.1 (Releases)[] exists as part of the Department's law enforcement authority to aid staff with a variety of inmate release situations to ensure that inmates are properly being released and nothing else is holding the inmate from being released.

Section 2 describes the Department's policy and procedure for a variety of releases, such as[] final discharge maximum expiration, state parole, [sex offenders], parole violator pending with a federal sentence, county parole, release for serious illness, bail, release pursuant to executive clemency, vacated and modified sentences and convictions, temporary absences, authorized temporary absence, inter-facility transfers, Community Corrections Center transfers, temporary transfers, Immigration and Customs Enforcement, and transfers for county prison housing.

***

Additionally, . . . Section 2 outlines how staff should handle sentence computation errors and erroneous release of a prisoner or an inmate that is held past sentence completion date.

Section 5 of 11.5.1 (Detainers)[] exists as part of the Department's law enforcement authority to aid staff with a variety of inmate detainer situations to ensure that inmates are being properly detained by the Department in accordance with the required authorization.

***

Section 5 describes the Department's policy and procedure for when different detainers are lodged or removed against inmates including procedures surrounding interstate agreement on detainers.

For any type of detainer received, a Department employee is required to complete a sentence status change and a detainer action letter.

***

4

Additionally, Section 5 outlines how staff should handle situations in which a jurisdiction requests extradition of an inmate but records indicate that the inmate has more than one detainer lodged against him.

Section 6 of 11.5.1 (Inmate Records System/Movement Reports)[] exists as part of the Department's law enforcement authority to aid staff with timely and accurately reporting information regarding a facility's inmate population.

Section 6 describes the Department's policy and procedure for computer entries regarding inmate movement and location, specifically information pertaining to an inmate's status, location, movement, etc.

Section 6 outlines how staff should handle entries as it relates to inmate movements regarding transfers to medical, transfers from medical, furloughs, release/discharge from custody, and vacated convictions/sentences, as well as other situations pertaining to inmate movements.

Section 9 of 11.5.1 (Outside Clearance, SIP/SIP Conversion & Rebuttable Parole)[] describes the Department's policy and procedure as it relates to the review process for outside assignments, RRRI eligibility, SIP/SIP conversion eligibility, and rebuttable parole eligibility.

*** 

Given the nature of the information contained within the requested Sections of 11.5.1, the successful manipulation thereof would lead to the release of an inmate prior to the date of his or her release.

(Certified Record (C.R.) Item 4 (paragraph numbers omitted); *see also* OOR Final Determination at 6-8.) Ms. Wood additionally explained that Sections 1, 2, and 9 of the policy include a checklist that a Department employee is required to complete before taking any action under those sections.

As to the reasons that disclosure of the relevant portions of the cited policy would present risks to security, Ms. Wood attested:

> The Department has had inmates, even without the assistance of this policy, successfully forge sentencing documentation and escape prison prior to their appropriate release date.
>
> Technological advances have made the Department's job increasingly more difficult to fight against forged documents that appear authentic, thereby heightening the necessity for the Department to protect against the release of policies and procedures that can be manipulated in furtherance of the creation of fraudulent documentation that facilitates the unintended and early release of an inmate.
>
> \*\*\*
>
> If the general public or an inmate was aware of procedures that the Department utilizes when receiving and releasing inmates, it is reasonable that the procedures and/or documents could be manipulated leading to an inmate being released before he or she is permitted.
>
> The Department relies on sentencing documentation from governmental agencies that provide sentencing information or warrant/detainer information for the Department's inmates.
>
> The information is reviewed in-depth prior to an inmate being released or moved for any reason.
>
> The Department reviews available criminal databases to determine if an inmate has active warrants or detainers beyond the documentation the Department possesses.
>
> If the inmates are aware of the specific records and documentation that the Department reviews, they could manipulate records to lead to an early release.

As was indicated earlier, inmates have successfully forged what appear to be authentic records and have been erroneously released from our custody.

If an inmate was aware of the administrative steps and documentation that is reviewed by the Department prior to their movement, transfer[,] or release, the inmate or an outside accomplice could generate credible forgeries that would lead to an improper release.

The release of an inmate prior to the completion of his sentence or being paroled would pose a reasonable risk to the public.

The Department houses violent criminals that are mandated by law to serve *at least* their minimum sentences before being considered for parole.

If an inmate escaped prison prior to his proper expiration, law enforcement would be placed at greater risk in the performance of their duties because they would be tasked with locating an individual that was erroneously released.

Also, the public would be unnecessarily placed at risk because an inmate was erroneously released from prison after successfully manipulating sentencing records.

*** 

While the Department currently receives forged documents from inmates and their families, that number would only increase if the information contained in the requested Sections of 11.5.1 are released to the public.

In addition, inmates are reasonably likely to retaliate against staff who they know have made unfavorable reports or decisions regarding their incarceration. It is reasonably likely that if an inmate is aware of the identity of the individual who is responsible for that inmate receiving an unfavorable evaluation/decision, that individual will be the target of harassment, threats, or physical harm.

Disclosure of these records could result in staff being less likely to record sensitive information or prevent staff from being candid because of the fear that an inmate will see their subjective remarks.

If staff fails to accurately report information[,] it could lead to less than candid recommendations to the Parole Board, which ultimately could place society's security in a worse situation if an inmate was paroled when he or she should not have been.

(C.R. Item 4 (paragraph numbers omitted; emphasis in original); *see also* OOR Final Determination at 8-10.)

Placing the Department's position within the context of the RTKL, Ms. Wood ultimately opined that disclosure of the requested records would be "reasonably likely to result in a substantial and demonstrable risk of physical harm to, or the personal security of, institution staff, inmates, and/or the general public," and would be "reasonably likely to threaten public safety [and] compromise the Department's public protection activities and function of maintaining order and control of inmates." (C.R. Item 4.) These assertions invoked the personal security and public safety exemptions under the RTKL. *See supra* notes 2 & 3.

In considering Picarella's appeal, the OOR appeals officer first rejected the Department's suggestion that Picarella failed to specifically address the stated grounds for denial of his request, and that his appeal was therefore deficient under section 1101(a)(1) of the RTKL, 65 P.S. §67.1101(a)(1) (requester's appeal "shall state the grounds upon which the requester asserts that the record is a public record . . . and shall address any grounds stated by the agency for delaying or denying the request"). The OOR appeals officer noted that Picarella did not use the OOR's standard appeal form, and he did not address each of the Department's stated reasons for denial, but he did assert that the requested records are public and that the

8

Department's denial contained only "generic" and "boilerplate" language that failed to establish a legitimate rationale for denying his request. (OOR Final Determination at 5.) The OOR appeals officer concluded that the form of Picarella's appeal was sufficient for purposes of section 1101(a)(1) of the RTKL, and accordingly proceeded to its merits. *Id.*

On the substance of Picarella's appeal, the OOR appeals officer noted that a declaration of agency staff made under penalty of perjury is competent evidence to sustain the agency's burden to establish an exemption from disclosure. *Id.* at 10 (citing *Sherry v. Radnor Township School District*, 20 A.3d 515, 520-21 (Pa. Cmwlth. 2011); *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010)). Moreover, the OOR appeals officer stated that, in the absence of evidence of bad faith, the averments contained in the declaration should be accepted as true. *Id.* (citing *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014)). The OOR therefore relied upon Ms. Wood's affidavit as it concerned the substantive exemptions from disclosure at issue.

With regard to the applicable exemptions, the OOR appeals officer observed that the personal security exemption requires the agency to show: (1) a "reasonable likelihood" of (2) a "substantial and demonstrable risk" to a person's security. *Id.* at 6 (citing *Delaware County v. Schaefer ex rel. The Philadelphia Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012)); *see* 65 P.S. §67.708(b)(1)(ii). A "reasonable likelihood," the OOR noted, requires "more than speculation or conjecture . . . ." (OOR Final Determination at 6 (quoting *California Borough v. Rothey*, 185 A.3d 456, 468 (Pa. Cmwlth. 2018)).) A "substantial and demonstrable risk," the OOR noted, is one that is "actual or real and apparent." *Id.* (quoting

9

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019)) (emphasis omitted).

Relying upon Ms. Wood's "detailed, non-conclusory declaration," the OOR appeals officer concluded that numerous withheld sections of Policy 11.5.1 relate to a "law enforcement or public safety activity," and Ms. Wood's averments demonstrated that "disclosure of the withheld portions of Policy 11.5.1 would be reasonably likely to result in fraudulent manipulation of the inmate processing, release, detainer, movement and parole eligibility procedures, which could lead to inappropriate placement or inadvertent release of inmates." *Id.* at 12. Specifically, the OOR appeals officer concluded that Sections 1, 2, 5, and 9 fell within the public safety exemption of the RTKL, because their disclosure would threaten public safety or a public protection activity. In the alternative, the OOR appeals officer reasoned that disclosure of those sections of the policy could result in the inmate population learning the identity of Department staff who participate in the process of assessing parole eligibility and release procedures, which would create a reasonable likelihood of a substantial and demonstrable risk to those Department staff members, thus falling within the personal security exemption. *Id.* at 12-13.

However, with regard to Section 6 of Policy 11.5.1, the OOR appeals officer observed that the Department's evidence established only that it concerned the policy and procedure for making "computer entries" relating to inmate movement and location. *Id.* at 13. Because these procedures were described as "essentially administrative tasks" relating to computer entry procedures, the OOR appeals officer concluded that the Department failed to demonstrate any inherent risk in disclosure of that portion of the policy. *Id.* Ms. Wood's explanation of the sort of risks that disclosure of the other withheld sections would present, the OOR appeals officer

opined, did not "convey the risks related to the disclosure [of] computer entry procedures." *Id.* Accordingly, the OOR reasoned that, with respect to Section 6 of the policy, the Department failed to establish the personal security or public safety exemptions from disclosure.

The OOR appeals officer thus granted Picarella's appeal in part, and required the Department to provide him with Section 6 of Policy 11.5.1. With respect to the remaining sections of the policy, the OOR appeals officer denied Picarella's appeal. Picarella then sought further review in this Court.[6]

Picarella explains that he desires access to the relevant records because he wishes to understand the procedures pursuant to which Department personnel determine whether an inmate will receive a positive or negative recommendation for parole, and that access to such records will foster accountability for such actions. (Picarella's Br. at 5.) Picarella primarily contends that, pursuant to Ms. Wood's description of the sections of the policy that were withheld, "[n]one of these sections . . . contain the records sought by Picarella relating to parole recommendation criteria used by the Department." *Id.* He further suggests that we should not consider the asserted consequences that Ms. Wood suggested would follow from disclosure because "none of the cited policy [sections] seem to contain the records being sought by Picarella." *Id.* at 7. In this regard, Picarella appears to suggest that the sections of the policy at issue were not relevant to his request in the first place.

---

[6] Our standard of review of determinations made by OOR appeals officers under the RTKL is *de novo*, and our scope of review is plenary. *See Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

With regard to the substantive exemptions at issue, Picarella asserts that disclosure of the policy sections at issue would not create a "reasonable likelihood" of a risk to the personal security of Department staff because "prisoners are already aware of the identities of the Department staff providing the information being used to determine parole recommendations." *Id.* at 8. Picarella further contends that prisoners are already routinely subject to unfavorable decisions by staff, and the Department offered no evidence that prisoners retaliate against staff as a result of those decisions. *Id.* According to Picarella, this further establishes that there is no "substantial and demonstrable" risk to Department staff for purposes of the personal security exemption.

As it concerns the public safety exemption, Picarella argues that the sections of Policy 11.5.1 at issue in this appeal are not related to a "law enforcement or other public safety activity," because he sought records relating to parole recommendation criteria, but Ms. Wood's declaration does not suggest that the pertinent sections of the policy are related to parole recommendations. Picarella claims that the "Department, via [Ms. Wood's declaration,] extensively details other, unrelated records, such as reception checklist[s], release checklist[s], and detainer verification procedures, that may relate to law enforcement and/or public safety activity, but it does not address the records actually being sought by Picarella." *Id.* at 10. Accordingly, Picarella contends that the records at issue do not relate to a "law enforcement" or "public safety" activity for purposes of the public safety exemption.

With regard to Ms. Wood's explanation that disclosure of the sections at issue would aid inmates or accomplices in forging documents that would allow improper releases, Picarella "stipulates that all of that may be entirely true." *Id.* However, he contends that the Department failed to produce evidence establishing

12

that the records that he "actually requested," *i.e.*, the "parole recommendation criteria," would cause a risk of such forgeries. *Id.* Picarella contends that the records that he "actually requested" would not pose any additional risk of forged documents, or otherwise jeopardize public safety.

The Department, for its part, reiterates its position before the OOR and contends that the OOR's Final Determination was correctly decided. With regard to Picarella's argument on appeal—that the sections of Policy 11.5.1 at issue were not responsive to his RTKL request—the Department contends that Picarella failed to raise this issue before the OOR, and that his argument should not be entertained on appeal. (Department's Br. at 16 n.2.)

The objective of the RTKL is "to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). We must "interpret the RTKL liberally to effect its purpose—that being, 'to promote access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011) (*en banc*) (quoting *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (*en banc*) (*Bowling I*), *aff'd*, 75 A.3d 453 (Pa. 2013) (*Bowling II*)). Because we construe the law liberally in favor of disclosure, "[e]xemptions from disclosure must be narrowly construed due to the RTKL's remedial nature . . . ." *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013) (*en banc*).

Unlike typical cases involving the application of an exemption from disclosure, in light of Picarella's argument to this Court, the issue here is not strictly

13

whether the OOR correctly applied the personal security or public safety exemptions. Indeed, Picarella presently "stipulates" that at least some of the security concerns highlighted by the Department are valid, and that disclosure of the information at issue would raise the risk of inmates using forged documents to obtain improper releases from incarceration. (Picarella's Br. at 10.) Procedurally, the Department denied Picarella access to certain portions of a policy and Picarella appealed that denial, but he now contends that the withheld portions of the policy were not relevant to his initial request. This raises a question as to why Picarella would be entitled to the material at issue if it did not fall within the scope of his request in the first place.

"Under the RTKL, a requester submits a request that 'tells the agency what records he wants, and the agency responds by either giving the records or denying the request by providing specific reasons why the request has been denied.'" *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124 (Pa. Cmwlth. 2015) (quoting *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 516 (Pa. Cmwlth. 2010)). As the OOR appeals officer noted in this case, in response to Picarella's request, "the Department granted access to several Departmental policies including Policy 7.2.1 (Counseling Services), Policy 11.4.1 (Case Summary)[,] and portions of Department Policy 11.5.1 (Records Office Operation)." (OOR Final Determination at 5.) Although the Department granted Picarella access to portions of Policy 11.5.1, it denied him access to the portions of that policy that it viewed as implicating the personal security and public safety exemptions, specifically Sections 1, 2, 5, 6, and 9. *Id.* It is Picarella's appeal of that partial denial that brought the matter before the OOR, and now before this Court. Yet, Picarella now argues that the information in question is not what he "actually

requested." (Picarella's Br. at 10.)  It follows that Picarella should have no continued objection to the Department's denial of access to that information.

Here, the Department identified the records that it understood to be responsive to Picarella's request, and it granted him access to them, except for the portions that it alleged were subject to an exemption from disclosure.  The Department identified the relevant exemptions and RTKL provisions in its response to Picarella's request.  This was in accord with the Department's duties under the RTKL.  *See* section 901 of the RTKL, 65 P.S. §67.901 ("Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request."); section 903 of the RTKL, 65 P.S. §67.903 (if an agency denies access to a record in whole or in part, its response shall include the "specific reasons for the denial, including a citation of supporting legal authority").  On appeal to the OOR, the Department supported its position with the sworn declaration of Ms. Wood, which the OOR found to be sufficient and credible evidence supporting the cited exemptions.  (OOR Final Determination at 10.)

Moreover, we find no error in the OOR appeals officer's analysis of the claimed exemptions.  Although Picarella challenges the application of the personal security exemption because he asserts that inmates already know when Department staff take unfavorable actions against inmates, we note that the record does not contain any evidence supporting Picarella's position in this regard.  By contrast, Ms. Wood's affidavit detailed the likelihood that disclosure of the withheld sections of the policy at issue would "result in the inmate population knowing the parole eligibility

15

and release process and the identity of correctional institution staff who participate in the process," which the OOR agreed would pose a substantial and demonstrable risk to the personal security of those staff members. (OOR Final Determination at 12-13.)

More significantly, Picarella does not meaningfully challenge the OOR's application of the public safety exemption. The OOR accepted Ms. Wood's explanation that disclosure of the relevant sections of Policy 11.5.1 would create an increased risk that inmates or accomplices could forge documents that would allow for erroneous releases, and that such would be reasonably likely to threaten public safety and jeopardize the Department's public protection activity. *See* 65 P.S. §67.708(b)(2). Picarella does not dispute the existence of that risk, but rather claims that the sections in question are not relevant to his request. (Picarella's Br. at 10.) Because the public safety exemption alone is sufficient to support the Department's partial denial of Picarella's request, and because Picarella has not established any basis upon which to conclude that the OOR's application of that exemption was erroneous, we find no grounds upon which to grant Picarella relief.

Accordingly, we must affirm the Final Determination of the OOR.

_____
PATRICIA A. McCULLOUGH, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Picarella Jr.,     :
    Petitioner    :
           :  No. 93 C.D. 2021
   v.        :
           :
Department of Corrections   :
(Office of Open Records),    :
    Respondent   :

## ***ORDER***

AND NOW, this 30th day of December, 2021, the January 8, 2021 Final Determination of the Office of Open Records is AFFIRMED.

            _____
            PATRICIA A. McCULLOUGH, Judge