IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherman Mack,      :
        Petitioner      :
     :
     v.      :
     :
Department of Corrections      :
(Office of Open Records),      :    No. 699 C.D. 2022
        Respondent      :    Submitted: April 14, 2023


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: July 26, 2023


       Sherman Mack (Mack), pro se, petitions this Court for review of the Office of Open Records' (OOR) June 6, 2022 Final Determination granting in part, denying in part, and dismissing as moot in part Mack's appeal from the Department of Corrections' (DOC) denial of his Right-to-Know Law (RTKL)[1] request (Request). Mack presents three issues for this Court's review: (1) whether the OOR erred by accepting DOC's representation that its Drug Elimination Management Operations (DEMO) Unit's funding and budget records do not exist; (2) whether the OOR erred by accepting DOC's representation that all requested DEMO policies and procedures are exempt from disclosure; and (3) whether the OOR erred by refusing to grant Mack sufficient time to prepare and submit argument in support of his Request. After review, this Court affirms in part, and vacates and remands in part.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Mack is incarcerated at DOC's State Correctional Institution at Somerset (SCI-Somerset). On April 9, 2022, Mack filed the Request with DOC seeking:

> (1) record showing the general budget (including start-up costs, [and] monthly or annual expenditures) for the DEMO program and DEMO operations;
>
> (2) record showing the source of all funding (state, federal[,] or other) for the DEMO program and DEMO operations;
>
> (3) record showing the criteria, rationale[,] and/or other reasons for selection of prisoners for placement into the DEMO program or [U]nit;
>
> (4) record detailing who applies the criteria, rationale[,] and/or reasons to render a decision or determination that a particular prisoner should be placed into the DEMO program or [U]nit; and,
>
> (5) record showing what administrative remedies, appeals[,] or procedures are made available to provide a prisoner with a meaningful opportunity for appeal or review of [] DOC decisions to place (or retain) such prisoner in the DEMO program or [U]nit.

Reproduced Record (R.R.) at 1a.

By April 20, 2022 letter, DOC informed Mack that Request items (1) and (2) did not exist (and DOC was not obligated to create them), and Request items (3), (4), and (5) are exempt from disclosure under Section 708(b)(1)(ii) (relating to personal security), (b)(2) (relating to law enforcement or public safety activities), and (b)(16) (relating to criminal investigations) of the RTKL, 65 P.S. § 67.708(b)(1)(ii), (2), (16). *See* R.R. at 3a-4a.

On May 4, 2022, Mack appealed to the OOR, essentially arguing that DOC acted in bad faith, in that it was "patently incredible, and strain[ed] all credulity" that, despite DOC's statutory and regulatory obligations to maintain

2

funding and policy records, its DEMO program operated without such records. R.R. at 6a. Mack also asserted that DOC failed to identify what documents were exempt for safety and criminal investigative reasons, and/or the factual or other basis linking those concerns to the requested records, and did not attempt to redact exempt portions thereof. Mack attached his declaration and the declaration of fellow DEMO Unit inmates Randall Austin (Austin) and Roger Buehl (Buehl) to his appeal.[2] *See* R.R. at 15a-20a. In addition, Mack requested the opportunity to supplement or amend his appeal after responsive records were identified. *See* R.R. at 10a.

The OOR allowed the parties to supplement the record by May 23, 2022, and directed DOC to notify any third parties of their ability to participate in the appeal. *See* Certified Record (C.R.), OOR Ex. 2 at 2-4.[3] The OOR declared that it would issue its Final Determination on or before June 10, 2022. *See* C.R., Ex. 2 at 2. Mack did not seek to supplement the record by May 23, 2022, nor did he request an extension of time in which to do so.[4]

On May 23, 2022, DOC submitted a position statement to the OOR. *See* R.R. at 22a-36a. Therein, DOC supplied a copy of the DEMO program's purchase order log in response to Request item (1) (*see* R.R. at 22a, 27a-30a), and a copy of SCI-Somerset's DEMO Unit Inmate Handbook in response to Request item (5) (*see* R.R. at 25a; *see also* C.R., OOR Ex. 3 at 19-54). However, DOC reiterated that documents responsive to Request item (2) did not exist. *See* R.R. at 22a-23a.

---

[2] The declarations reflect that DOC's central office directed that Mack, Austin, and Buehl be removed from general population, and/or restricted housing, and placed in SCI-Somerset's DEMO Unit for one year because of their purported participation in institutional drug trafficking, despite their claims that they have never been accused of, or charged with, any drug trafficking activities. *See* R.R. at 15a-20a.

[3] Citations to the Certified Record are made herein where Mack did not include the referenced documents in the Reproduced Record.

[4] The OOR's appeal notice included: "If you are unable to meaningfully participate in this appeal under the above deadlines, please notify the [a]ppeals [o]fficer as soon as possible." C.R., Ex. 2 at 2 (bold emphasis omitted).

3

In support of its denial, DOC appended an affidavit by DOC's Deputy Agency Open Records Officer Kimberly Grant (AORO Grant), who attested that, "[i]n response to [] Mack's [R]equest, [she] contacted SCI[-]Somerset's Corrections Superintendent Assistant ([]CSA[]) . . . Christie Schenk [(CSA Schenk)], who would likely have possess[ed] such records if they existed[,]" CSA Schenk "informed [her] that there are no responsive documents regarding the [R]equest" and, thus, "after conducting a good faith search . . . , [AORO Grant could] state [] that [DOC] does not possess any responsive records to the RTKL Request." R.R. at 32a.

Further, DOC Chief of Security Major John Oliver (Major Oliver) maintained in his affidavit that records responsive to Request items (3) and (4) "consist of a local procedures manual that outlines the inner workings of the DEMO Unit and relate[] to inmate population management which is considered confidential[,]" R.R. at 24a, their disclosure "would reasonably likely threaten public safety or a public protection activity[,]" R.R. at 25a, and, thus, they "were denied as they unquestionably fall under the personal security and law enforcement exemptions to the RTKL."[5] R.R. at 24a; *see also* R.R. at 34a-36a.

Major Oliver described, in relevant part:

5. The operations of the DEMO Unit[] are confidential and pertain directly to the security function of operating Pennsylvania's correctional institutions.

6. Where and why inmates are housed at specific institutions is a direct security function required for the orderly operation of all correctional institutions.

7. Allowing the public to ascertain when and why inmates are moved to specific institutions poses a security threat and impacts the safety of both inmates and staff.

---

[5] DOC did not argue in its May 23, 2022 position statement, as it did in its denial, that records responsive to the Request were exempt under Section 708(b)(16) of the RTKL (relating to criminal investigations).

4

8. Security threat groups and various other factors are monitored and considered in placing inmates within specific units. Any insight into this process can facilitate the manipulation of the population management of correctional institutions and create a security risk for inmates and staff for a variety of reasons including retaliation and general increased risk of violence.

9. The disclosure of the requested records would threaten public safety and [DOC's] public protection activities in maintaining safe and secure correctional institutions by allowing inmates or others to access information that will interfere with the personal security of individuals providing recommendations and opinions relating to the inner workings and operation of a prison.

10. Safety and security of staff and inmates is a critical issue in prison management where each prison institution maintains the care, custody, and control of a multitude of dangerous and potentially dangerous inmates.

11. As a whole, the requested records are maintained by [DOC] in connection with its law enforcement function of supervising the incarceration of inmates in a safe and secure manner.

12. For the reasons set forth above, the disclosure of the requested record is reasonably likely to result in a substantial and demonstrable risk of physical harm to, or the personal security of, institution staff, inmates, and/or the general public.

13. Additionally, based on the foregoing reasons, the disclosure of the requested record is reasonably likely, to threaten public safety, as well as compromise [DOC's] public protection activities and function of maintaining order and control of inmates.

R.R. at 34a-36a.

On June 6, 2022, the OOR issued its Final Determination. *See* OOR Final Determination, R.R. at 39a-45a. The OOR granted Mack's challenge that DOC failed to provide documents responsive to Request item (5) because the DEMO

5

Unit Inmate Handbook did not reveal any inmate appeal procedures.[6] The OOR dismissed Mack's challenge that DOC failed to provide documents responsive to Request item (1) as moot because DOC produced the DEMO program's purchase order log. *See* OOR Final Determination at 2, R.R. at 39a. The OOR denied Mack's challenge that DOC failed to provide documents responsive to Request item (2), stating that, based on AORO Grant's affidavit, DOC demonstrated that it conducted a good faith search for records responsive to Request item (2) and determined that none existed. *See* OOR Final Determination at 3-5, R.R. at 40a-42a. The OOR denied Mack's challenge that DOC failed to provide documents responsive to Request items (3) and (4), concluding, based on Major Oliver's affidavit, that releasing such records would interfere with personal and public security.[7] *See* OOR Final Determination at 5-8, R.R. at 42a-45a.

On June 12, 2022, Mack filed a Petition for Reconsideration, arguing that the OOR hastened to issue the Final Determination without addressing his June 2, 2022 request for extra time to research and respond to DOC's May 23, 2022 position statement and, thus, violated his due process rights.[8, 9] *See* R.R. at 48a-51a.

---

[6] The OOR directed DOC to conduct a good faith search for records responsive to Request item (5) and provide to Mack within 30 days either records discovered as a result of that search or a statement that no such records exist. *See* OOR Final Determination at 3, R.R. at 40a.

[7] Because DOC did not address the argument asserted in its denial letter that responsive records were exempt under Section 708(b)(16) of the RTKL (relating to criminal investigations), the OOR "deem[ed] the argument abandoned on appeal and [did] not address that issue in th[e] Final Determination." OOR Final Determination at 2 n.2, R.R. at 39a.

[8] In his June 2, 2022 letter, Mack declared that because DOC mailed its May 23, 2022 position statement to him via Smart Communications, DOC's Florida-based mail handler, he did not receive it at SCI-Somerset until June 2, 2022, and, thus, he did not have adequate time to research and respond thereto. He requested leave to file a reply to DOC's position statement within 30 days. *See* R.R. at 37a. The OOR did not expressly consider Mack's June 2, 2022 letter in its Final Determination, nor did it include the letter in the Certified Record submitted to this Court.

[9] Mack appended to the Petition for Reconsideration a copy of his proposed reply to DOC's May 23, 2022 position statement. *See* C.R., OOR Ex. 5 at 7-15.

On June 27, 2022, the OOR denied Mack's Petition for Reconsideration. *See* R.R. at 52a. On July 1, 2022, Mack appealed to this Court.[10]

On September 30, 2022, Mack filed a Motion for Modification of the Record (Modification Motion), in which he asks this Court to supplement the Certified Record to include the June 2, 2022 letter he submitted to the OOR seeking an extension of time to research and reply to DOC's May 23, 2022 position statement. Therein, Mack represents:

> On July 5, 2022[,] and again on July 18, 2022, [Mack] contacted the [OOR] to request that it amend its record to include his June 2, 2022 letter-request. The [OOR] acknowledged that it had received the June 2, 2022 letter, but rejected [Mack's] request[] to amend or modify the OOR['s] record.

Modification Motion at 1-2. DOC opposed the Modification Motion. By October 31, 2022 Order, this Court directed that the Modification Motion be decided with the merits of Mack's appeal.

Initially, the RTKL mandates that

> a "Commonwealth agency [(i.e., DOC)] shall provide public records in accordance with [the RTKL]." [Section 301 of the RTKL,] 65 P.S. § 67.301. A record "in the possession of [a] Commonwealth agency . . . shall be presumed to be a public record" unless it is exempt under Section 708 [of the RTKL], privileged, or exempt from disclosure under other federal or state law or judicial order. [Sections 305(a) and 701 of the RTKL, 65 P.S.] §§ 67.305(a), 67.701. At the initial request stage, an agency is required to assess the public status of requested records, and, if applicable, specify reasons for denying access with "citation of supporting legal authority." [Section 903 of the RTKL, 65 P.S.] § 67.903.

*McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 400 (Pa. 2021).

_____

[10] "[This Court's] standard of review of a final determination issued by the OOR is *de novo* and our scope of review is plenary." *Pa. Tpk. Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 556 n.3 (Pa. Cmwlth. 2020).

7

If "the requested information is exempt under Section 708(b) [of the RTKL], the information is not a 'public record' and is exempt from disclosure in its entirety." *Dep't of Lab*[.] *& Indus. v. Simpson*, 151 A.3d 678, 684 (Pa. Cmwlth. 2016). Accordingly, exemptions must be narrowly construed, and the agency claiming the exemption bears the burden of proof by a preponderance of the evidence.[11] *See* 65 P.S. § 67.708(a); *see also* [*Off. of Dist. Att'y of Phila. v.*] *Bagwell*[, 155 A.3d 1119 (Pa. Cmwlth. 2017)]; *Pa. Off*[.] *of Inspector Gen. v. Brown*, 152 A.3d 369 (Pa. Cmwlth. 2016); *Simpson*.

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019) (footnote omitted).

However,

[w]hen parts of a record are public - meaning not exempt by another law, privilege or exemption under Section 708(b) [of the RTKL, 65 P.S.] § 67.708(b) - an agency "shall grant access to" the public parts of the record pursuant to its disclosure duty. [Section 706 of the RTKL, 65 P.S.] § 67.706. Thus, by its plain and unambiguous language, the RTKL places the statutory duty of disclosure solely on the government agency.

*McKelvey*, 255 A.3d at 400.

Mack first argues that the OOR erred by accepting DOC's representation that its DEMO Unit funding and budget records do not exist. Specifically, Mack asserts that the OOR abused its discretion by finding that AORO Grant's affidavit was sufficient to meet DOC's burden of proving that the requested financial records do not exist beyond DOC's DEMO program purchase order log, where AORO Grant only inquired of CSA Schenk (who is not responsible for maintaining financial records), and the DEMO program is an independent, segregated housing unit with special security protocols, and separate staffing,

---

[11] "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Del. Cnty. v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

equipment, meals, supplies, and activity equipment and yard, which has to somehow be funded.

"As part of a good faith search, [an agency's] open records officer has *a duty to advise all custodians of potentially responsive records about the request*, and to obtain all potentially responsive records from those in possession." *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1171-72 (Pa. Cmwlth. 2018) (*Uniontown Newspapers I*), *aff'd*, 243 A.3d 19 (Pa. 2020) (*Uniontown Newspapers II*) (emphasis added). In *Uniontown Newspapers II*, the Pennsylvania Supreme Court agreed that "[a] good faith response - either to produce records or assert an exemption - cannot occur absent a good faith search, followed by collection and review of responsive records, so an agency has actual knowledge about the contents of the relevant documents." *Id.* at 28-29 (quotation marks omitted). The *Uniontown Newspapers II* Court also "reject[ed] DOC's contention [that] the open records officer fulfills his or her obligation simply by relying on the representations of others without inquiring as to what investigation was made and without reviewing the records upon which the individual responding to the request relied." *Id.* at 28.

"An agency may meet its burden [of proving a good faith search] through an unsworn attestation or a sworn affidavit." *Glob. Tel*Link Corp. v. Wright*, 147 A.3d 978, 980 (Pa. Cmwlth. 2016) (quoting *W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015)). "The affidavits must be detailed, nonconclusory, and submitted in good faith. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (quoting *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc* ) (citation omitted)).

A requester bears the burden of proving an agency committed bad faith. Evidence of bad faith is required. [*See*] *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012). After-discovered records are a type of evidence from which a court may discern bad faith. [*See Chambersburg Area Sch. Dist. v.*] *Dorsey*[, 97 A.3d 1281 (Pa. Cmwlth. 2014)]. Evidence of an agency's failure to perform its mandatory duties, including a failure to search its records prior to a denial of access, may suffice. [*See*] *Dorsey*; *accord* [*Parsons v. Pa. Higher Educ. Assistance Agency* (]*PHEAA*[), 910 A.2d 177 (Pa. Cmwlth. 2006)].

*Uniontown Newspapers I*, 185 A.3d at 1170-71 (citation omitted).

Here, according to her affidavit, AORO Grant's good faith search in April 2022 consisted of inquiring *only* of CSA Schenk whether records responsive to Request items (1) and (2) existed, and CSA Schenk's response that there are not, leading AORO Grant to attest that DOC did not possess DEMO Unit funding and budget records. AORO Grant's reliance on CSA Schenk's statement that no records existed "without inquiring as to what investigation was made," did not constitute a good faith search for the records. *See Uniontown Newspapers II*, 243 A.3d at 28. In addition, AORO Grant stated that CSA Schenk was "likely" to have the records if they existed, *see* R.R. at 32a, but because AORO Grant's affidavit lacked certainty that CSA Schenk was *the* keeper of the requested records, or a statement that AORO Grant also inquired of another individual about the records, or an explanation for why it was not necessary to ask someone in addition to CSA Schenk, DOC failed to satisfy its duty to perform a good faith search.

Further, with its May 23, 2022 position statement, DOC produced a copy of DOC's DEMO program purchase order log not previously submitted in response to Mack's Request item (1). Such "[a]fter-discovered records are a type of evidence from which [this Court] may discern bad faith[,]" and is "[e]vidence of an agency's . . . failure to search its records prior to a denial of access[.]" *Uniontown Newspapers I*, 185 A.3d at 1171. Moreover, this Court has previously held that

10

"[DOC's] failure to locate responsive records until motivated by [appeal/]litigation evinces bad faith, meriting consideration by a fact-finder." *Id*. at 1172. Under such circumstances, "the veracity of [DOC's] submissions explaining reasons for nondisclosure should [] be questioned." *McGowan*, 103 A.3d at 381. DOC's production of its after-discovered DEMO program purchase order log *after* DOC denied Request item (1) should have alerted the OOR to question the veracity of DOC's denial of Request items (1) and (2), which, based on this Court's review, AORO Grant's affidavit does not satisfy. Accordingly, the OOR erred by accepting DOC's representation based on AORO Grant's affidavit that no DEMO budget and funding records exist beyond DOC's DEMO program purchase order log.

Mack next contends that the OOR erred by accepting DOC's representation that DEMO policies and procedures detailing its prisoner selection criteria and which DOC personnel apply the criteria to make the selection are exempt from disclosure based on personal and public safety concerns in Section 708(b)(1)(ii) and (2) of the RTKL. Specifically, Mack argues that Major Oliver's affidavit not only fails to identify applicable records, but consists of mere speculation with no relation to actual facts that disclosure of such policies and procedures would endanger personal or public safety, or otherwise impede DOC's ability to carry out its public protection function. In addition, Mack claims that Major Oliver's conclusory statements are contrary to DOC's release of other similar restricted housing unit policies and procedures.

Section 708(b)(1)(ii) of the RTKL exempts a record the disclosure of which "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii).

> To establish [a personal security exemption under Section 708(b)(1)(ii) of the RTKL], "the agency must demonstrate

11

(1) a 'reasonable likelihood' of (2) a 'substantial and demonstrable risk' to a person's personal security." *Del. C[n]ty. v. Schaefer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012). In order to show a reasonable likelihood, "[a]n agency must offer more than speculation or conjecture to establish the security-related exceptions under the [RTKL]." *Cal[.] Borough v. Rothey*, 185 A.3d 456, 468 (Pa. Cmwlth. 2018). This Court has "defined substantial and demonstrable [risk] as actual or real and apparent." *Carey [v. Pa. Dep't of Corr.]*, 61 A.3d [367,] 373 [(Pa. Cmwlth. 2013)][12] . . . .

*Suber-Aponte*, 202 A.3d at 180 (emphasis omitted).

In addition, Section 708(b)(2) of the RTKL exempts from disclosure "[a] record maintained by an agency in connection with . . . law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety. . . ." 65 P.S. § 67.708(b)(2).

"To establish [the public safety exemption under Section 708(b)(2) of the RTKL], an agency must show: (1) the record at issue relates to a law enforcement or public safety activity; and (2) disclosure of the record would be reasonably likely to threaten public safety or a public protection activity." *Smith ex rel. Smith Butz, LLC v. Pa. Dep't of Env[']t Prot.*, 161 A.3d 1049, 1062 (Pa. Cmwlth. 2017). As is required by the RTKL's personal security exemption, more than mere speculation is necessary for [DOC] to meet its burden under the public safety exemption. *Carey*.

*Suber-Aponte*, 202 A.3d at 184.

Importantly,

[t]he RTKL is remedial legislation to facilitate government transparency and promote accountability. *P[a.] State Police v. Grove*, . . . 161 A.3d 877, 892 ([Pa.] 2017); *Bowling v. Off[.] of Open Records*, 990 A.2d 813,

---

[12] *Carey* was supplemented by *Carey v. Pennsylvania Department of Corrections* (Pa. Cmwlth. No. 1348 C.D. 2012, filed July 3, 2013) (unreported).

12

824 (Pa. Cmwlth. 2010)[,] *aff'd*[,] . . . 75 A.3d 453 ([Pa.] 2013). . . . [T]he statute dramatically expanded the public's access to government documents and demonstrated an intent on the part of the General Assembly to expand government transparency. *Levy v. Senate of P*[*a.*], . . . 65 A.3d 361, 381 ([Pa.] 2013). The RTKL is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *P*[*a.*] *State Educ*[*.*] *Ass*[*'n*] *v.* . . . *Dep*[*'t*] *of C*[*mty.*] *& Econ*[*.*] *Dev*[*.*]*,* . . . 148 A.3d 142, 155 ([Pa.] 2016). For this reason, the law must be construed to maximize access to public records that are in an agency's possession.

*McKelvey*, 255 A.3d at 399-400.

This Court acknowledges that "[p]ersonal security issues are of particular concern in a prison setting." *Carey*, 61 A.3d at 374. And, at first blush, it would seem that revealing DOC's DEMO program selection criteria and DOC staff who make those selections could *conceivably* endanger DOC personnel and, perhaps, public safety. However,

[t]his Court consistently holds that speculation and conclusory statements in an affidavit do not show a reasonable likelihood of a threat to security. An affidavit that does nothing more than state that, based on the affiant's professional experience, the disclosure of the information would create a substantial risk of physical harm for the agency and the public is insufficient.

*Id*. at 376 (citation, quotation marks, and footnote omitted). Further, "[a]dequate description of responsive records is crucial to demonstrate how disclosure threatens public safety. Our close assessment of [Major Oliver's a]ffidavit reveals that DOC did not explain which records are protected and which are not." *Id*. at 377.

In similar past RTKL litigation, this Court has found error where

DOC [] did not connect responsive records with a threat to public safety. Nor did DOC explain how the disclosure of communications is reasonably likely to impair transfers.

13

[And, although] DOC may be able to redact responsive records and thus render them non-threatening to public safety[,] . . . DOC did not disclose any records in redacted form, and it offered no reason for its failure to do so.

*Id*. at 377 (citation omitted).

Moreover, DOC did not address Mack's claims that the DEMO Unit's policies and procedures are similar, if not identical, to DOC's other restricted housing unit policies and procedures, which are available for public access and, as such, present no more substantial, demonstrable personal or public safety risk.

This Court has ruled:

When security-related ex[em]ptions are asserted in the police or prison context, *and* responsive records implicate valid security concerns, *and* an agency's proof is insufficient to discern the contents of responsive records, seeking additional evidence may be appropriate. *Dep't of Env[*'t*] Prot. v. Cole*, 52 A.3d 541, 551 (Pa. Cmwlth. 2012) (regarding additional evidence generally); *Schaefer* (remanding to trial court to assess personal security exception); *Dep't of Admin. Servs./ASCI v. WTAE-TV*, 13 A.3d 1025 (Pa. Cmwlth. 2011) (*en banc*) (same); *see generally Bowling*.

Here, . . . DOC did not describe the responsive records or connect the security threat to them, and the records relate to prison operations, heightening the risk associated with disclosure. Without more information, [the OOR was] remiss in deciding this case on the current record.

*Id*. at 377 (citation omitted). Accordingly, the OOR erred by accepting DOC's representation based on Major Oliver's affidavit that all requested DEMO policies and procedures are exempt from disclosure based on personal and public safety concerns in Section 708(b)(1)(ii) and (2) of the RTKL.

Lastly, Mack asserts that the OOR erred by refusing to grant Mack sufficient time to prepare and submit argument in support of his Request. However, the OOR allowed both parties to supplement the record by May 23, 2022, and offered

14

an opportunity for either party to seek an extension of the May 23, 2022 deadline. *See* C.R., Ex. 2 at 2. Mack did not supplement the record by May 23, 2022, or request an extension of time in which to do so. In addition, there is no procedural mechanism for Mack to reply to DOC's May 23, 2022 position statement.

The OOR denied Mack's Petition for Reconsideration on the following basis:

> [Mack] has not cited to any deprivation of due process. Upon assignment of the appeal, both parties were notified of a record closing date [(i.e., May 23, 2022)]. Further, [DOC] did not raise new grounds for denial on appeal; therefore, [Mack] had notice of [DOC's] bases for denial and an opportunity to make a submission in support of his appeal to the OOR. Based on the record, [Mack] simply failed to file a timely reply and provides no evidence that any violation of his due process rights caused the untimely filing. Finally, . . . the [OOR] [a]ppeals [o]fficer did not issue the Final Determination prematurely, as it was issued two weeks after the record closing deadline [(i.e., June 6, 2022)].

R.R. at 52a. This Court finds no error in the OOR's reasoning and adopts the same to deny the Modification Motion.

Based on the foregoing, the Modification Motion is denied. The portion of the OOR's Final Determination requiring DOC to conduct a good faith review for records responsive to Request item (5) is affirmed. The OOR's dismissal of Request item (1) as moot, and the OOR's denial of Mack's challenges to DOC's responses to Request items (1), (2), (3), and (4) are vacated, and this matter is remanded to the OOR to order DOC to: conduct a good faith search for records responsive to Request items (1) and (2) for DEMO budget records beyond DOC's DEMO program purchase order log and records showing the source of all funding for the DEMO program and operations, and provide to Mack, within 30 days, either records

15

discovered as a result of that search (subject to appropriate redaction, if applicable), or a statement that no DEMO budget records exist beyond DOC's DEMO program purchase order log or such other funding records exist; and to order DOC to identify the records responsive to Request items (3) and (4), declare whether and how such records may differ from similar publicly posted DOC restricted housing procedures, specify how the security-related exemptions in Section 708(b)(1)(ii) and (2) of the RTKL apply thereto, and state why the security related information cannot be redacted.

 

_____

ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherman Mack,                          :
                    Petitioner         :
                                       :
         v.                            :
                                       :
Department of Corrections              :
(Office of Open Records),              :    No. 699 C.D. 2022
                    Respondent         :

## O R D E R

AND NOW, this 26th day of July, 2023, the Office of Open Records'
(OOR) Final Determination is AFFIRMED in part and VACATED in part, and the
matter is REMANDED to the OOR to take further action consistent with this
Opinion.

The Motion for Modification of the Record is DENIED.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge